# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-0540

ROBERT FOUNTAIN, APPELLANT,

v.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided February 9, 2015)

*Jessica M. Alfano,* of Boston, Massachusetts, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Mark D. Vichich*, Acting Deputy Assistant General Counsel; and *Christopher O. Adeloye*, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and BARTLEY, *Judges*.

MOORMAN, *Judge*:  The appellant, Robert Fountain, through counsel, seeks review of a January 28, 2013, decision of the Board of Veterans' Appeals (Board) denying service connection for tinnitus.  On appeal, the appellant contends that the Board failed to provide an adequate statement of reasons or bases for rejecting his testimony concerning the continuity of his symptoms after service.  The Secretary argues that any such error is harmless under *Walker v. Shinseki*, 708 F.3d 1331, 1339-40 (Fed. Cir. 2013), because tinnitus is not listed under 38 C.F.R. § 3.309(a), as a chronic condition.  This panel directed supplemental briefing from the parties regarding whether tinnitus is encompassed within the list of chronic conditions under § 3.309(a) as "[o]ther organic diseases of the nervous system."  The Court holds that the Secretary's proposed interpretation of the regulation, which mirrors the relevant statute, 38 U.S.C. § 1101, to broadly exclude tinnitus is not persuasive.  *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  The Court adopts the interpretation urged by the veteran, that § 3.309(a) includes tinnitus, at a minimum where there is evidence of

acoustic trauma, as an "organic disease[] of the nervous system."[1]  Accordingly, based on the alternative interpretation that encompasses tinnitus under that listing, the Court concludes that the Board's error in evaluating the evidence on continuity of symptomatology was prejudicial to the appellant, and the Court will vacate the January 2013 Board decision and remand the matter for further adjudication consistent with this opinion.

## I. FACTS

Mr. Fountain served on active duty in the U.S. Army from February 1977 to July 1980. Record (R.) at 408.  During service, he was a motor transport operator, driving large engine diesel trucks.  R. at 163, 408.  Upon separation, he was diagnosed with bilateral hearing loss and, at that time, he filed an application for VA benefits for a problem with his "hearing."  R. at 311-12, 307. In December 1980, a VA regional office (RO) issued a decision granting entitlement to benefits for bilateral hearing loss, specifically sensory neural high frequency loss, at a noncompensable level. R. at 293.

In January 2009, Mr. Fountain filed a claim for VA benefits for tinnitus and a claim for an increase in VA benefits for his bilateral hearing loss.  R. at 163.  He stated that his hearing loss and tinnitus were "due to noise exposure while [he was] assigned to transportation units in the Army" and noted that "while assigned to [Fort] Benning[,] GA, a practice round exploded directly in front of my face, blowing off my helmet, causing temporary deafness and considerable tinnitus."  *Id*.

A May 20, 2009, VA audiological examination assessed Mr. Fountain's complaints of tinnitus.  R. at 133-35, 447.  The audiologist opined that the tinnitus "is less likely as not (less than 50/50 probability) caused by or a result of in-service acoustic trauma."  R. at 135.  The opinion was

---

[1] The Court notes that tinnitus can have a variety of causative factors.  For example, VA's internal guidelines recognize that although sensorineural hearing loss is the most common cause of tinnitus, other known causes include Meniere's disease, kidney disease, and dental disorders.  Secretary's (Sec'y) Sept. 8, 2014, Supplemental (Suppl.) Memorandum (Mem.), Appendix [hereinafter Appendix] at 5 (VA Training Letter 10-02 (Mar. 18, 2010) (Training Letter or Training Letter 10-02)).  In this case, however, the Court deals with the issue of tinnitus in a case where there is evidence of acoustic trauma–indeed, where VA concedes that this veteran was exposed to acoustic trauma during service (R. at 126)–and VA's internal guidelines acknowledge that acoustic trauma causes damage to the inner ear (Appendix at 16).  *See also id.* at 3 (explaining that sensorineural hearing loss "is due to a problem in the inner ear or in the auditory (Cranial Nerve VIII) nerve between the inner ear and the brain" and is most commonly caused by either presbycusis or noise-induced hearing loss).  Because we necessarily are limited by the facts of this case, where there is evidence of acoustic trauma, we do not address circumstances where such evidence is lacking.

based on service treatment records and the VA examinations "conducted shortly after military separation that were all silent for complaint/diagnosis of tinnitus, plus the conceded history of military noise exposure." *Id.* The report noted a review of service records that were silent for complaint or diagnosis of tinnitus but that showed hearing loss and a VA 1980 audiological examination report that stated that Mr. Fountain "did not report tinnitus." R. at 447. The audiologist recorded Mr. Fountain's current complaints of bilateral ringing in the ears and hearing loss and noted that his tinnitus was recurrent but not constant and that it "occurs an average of at least once or twice daily for an average duration of 30 seconds per episode." R. at 133. The audiologist undertook diagnostic testing and examination. Regarding history of noise exposure, the audiologist recorded Mr. Fountain's report that he was exposed to noise in service while performing duties, without hearing protection, as a motor transport operator for trucks and heavy equipment, as well as his report of "a positive history of civilian occupational noise exposure to machinery and heavy equipment [when he did] 'road work' for 26 years; [and] hearing protection was not usually worn during this employment." *Id.* According to the report's notations, Mr. Fountain stated that tinnitus began "with sudden onset during military service when a[n] explosive simulator went off in close proximity." R. at 133. The diagnosis included "normal sloping to mild sensorineural hearing loss bilaterally" and recurrent bilateral tinnitus. R. at 134.

In May 2009, the RO denied Mr. Fountain's claims. R. at 124. The RO conceded exposure to acoustic trauma based on Mr. Fountain's military occupation but denied service connection for tinnitus, finding no nexus between his current tinnitus and service. R. at 126. The RO also denied a higher (compensable) rating for hearing loss. Mr. Fountain did not appeal this decision, and it became final.

In November 2010, Mr. Fountain filed a claim to reopen the disallowance of his tinnitus claim. R. at 120. He specifically referenced the 2009 RO decision having noted that, on his separation examination report dated October 29, 1980, he did not report having tinnitus. In response, he stated: "I do not recall ever being asked if I had tinnitus while in the service. I was not aware that tinnitus was actually a disability until recently. Tinnitus should have been granted because I was suffering from the disability while in the service." *Id.* The RO denied his claim to reopen, finding that no new and material evidence on the issue of nexus had been submitted. R. at 82-87. In April

2011, Mr. Fountain filed a Notice of Disagreement (NOD) in which he stated that his November 2010 statement should be considered new and material evidence. R. at 79. He appealed to the Board in July 2012, reiterating that his tinnitus had its onset in the military and explaining that his "hearing problems" began with the explosion near his head, which caused temporary deafness in his ear, and "the constant exposure to noise on a continuous and daily basis while [he was] driving and servicing diesel engines." R. at 37.

On January 28, 2013, the Board issued the decision on appeal, finding that Mr. Fountain's November 2010 and April 2011 statements were new and material evidence, but denying the claim. R. at 3-18. The Board stated that the statements were new and material evidence because "they suggest chronicity of symptoms in service and continuity of tinnitus after service, including providing a reason for the failure to mention tinnitus after service or to claim service connection for tinnitus for years after service" and they "offer an explanation for why he did not report or complain of tinnitus symptoms prior to his January 2009 claim." R. at 10. In considering the merits, the Board found that Mr. Fountain had a current disability of tinnitus and was exposed to acoustic trauma in service because his statements of such exposure were credible "as they were supported by the evidence of record and are consistent with the duties and circumstances of his service." R. at 13.

The Board, however, determined that the weight of the "competent" evidence was against a nexus between his current tinnitus and the loud noise exposure during service. R. at 18. As part of its analysis, the Board stated that, although Mr. Fountain "is competent to report symptoms as they come to him through his senses, tinnitus is not the type of disorder [for which] a lay person can provide competent evidence on questions of etiology." *Id*. Although the Board acknowledged Mr. Fountain's statements that his tinnitus began in service, it found his statements were not credible in light of the absence of complaints of tinnitus symptoms during service and for many years after service, as well as the failure to file a claim for VA benefits for tinnitus before 2009. R. at 13-16. The Board determined that the May 2009 VA audiological opinion was entitled to "great probative value." R. at 17. This appeal followed.

4

## II. ANALYSIS

### A. Parties' Arguments

On appeal, Mr. Fountain argues that the Board failed to provide adequate reasons or bases for rejecting his testimony concerning the continuity of his symptoms since service. Additionally, he argues that the Board erred by categorically excluding his lay statements as incompetent on the question of tinnitus etiology. Noting that tinnitus is a subjective condition, the appellant maintains that his tinnitus can be substantiated by his testimony. Reply Brief (Br.) at 3-4. The appellant does not specifically discuss *Walker*, 708 F.3d at 1340, which clarified that continuity of symptomatology may be used to establish linkage to service only for the list of chronic conditions in 38 C.F.R. § 3.309(a), but maintains that, although tinnitus is not expressly included in the regulation's list, a "common sense reading" of § 3.309(a) requires that tinnitus be included under "[o]ther organic diseases of the nervous system." Appellant's (App.) Sept. 29, 2014, Response (Resp.) to Court Order at 5. In support, the appellant argues that the Secretary has read this specific § 3.309(a) provision as including sensorineural hearing loss in VA Training Letter 10-02, and that this Training Letter recognizes a potential association between hearing loss and tinnitus. He contends that tinnitus is similar to sensorineural hearing loss in that tinnitus is regarded as a condition of the central nervous system, and he notes that, although Training Letter 10-02 labels tinnitus as a mere symptom, tinnitus is compensable as a disability in the veterans benefits scheme. *Id*. Finally, he argues that the Secretary's rulemaking and General Counsel Opinion support the view that tinnitus is a central nervous system condition because the Final Rule specifically describes tinnitus as being "generated within the central auditory pathways" and a "central nervous condition." *Id*. at 9 (quoting 68 Fed. Reg. 25,822 (May 14, 2003)).

Relying on VA Training Letter 10-02, the appellant contends that the Board erred in relying on the May 2009 VA audiological report because the report failed to address the relationship between his current tinnitus and his service-connected sensorineural hearing loss, and the Board should have addressed this theory of secondary service connection.

The Secretary contends that any failure by the Board in discounting Mr. Fountain's lay statements is harmless because, under 38 C.F.R. § 3.303(b) and § 3.309(a), as a matter of law "tinnitus is not a disease for which a claimant can establish entitlement to benefits by demonstrating

5

chronicity and continuity of symptomatology." Sec'y Br. at 7, 11-13, 19, 23 (citing *Walker*, 708 F.3d at 1338). Regarding an interpretation of § 3.309(a), the Secretary acknowledges that the specific provision is ambiguous because "it does not explicitly include or exclude tinnitus from the '[o]ther organic diseases of the nervous system' category." Sec'y Sept. 8, 2014, Suppl. Mem. at 4. Relying on VA Training Letter 10-02, the Secretary argues that it is the established policy of VA that tinnitus is not encompassed within the list of chronic diseases under § 3.309(a) as "[o]ther organic diseases of the nervous system." Appendix at 10. He notes that the Training Letter distinguishes tinnitus from sensorineural hearing loss, which VA has determined to be "an organic disease of the nervous system," because tinnitus is a symptom and not a disease. Sec'y Sept. 8, 2014, Suppl. Mem. at 2-3. He argues that the Board decisions that are inconsistent with the "established policy" are unfortunate but are "not indicative of any policy position on the matter," and his interpretation is nonetheless due deference. *Id*. at 5. The Secretary further argues that, even assuming the Court rejects his interpretation and determines that tinnitus is a central nervous condition, tinnitus cannot reasonably be considered an organic disease of the nervous system, in light of a fact sheet from the National Institute on Deafness and Other Communication Disorders (NIDCD) that defines tinnitus as a symptom. *Id*. at 9.

Regarding the competence of the lay evidence, the Secretary acknowledges that the Board determined that a layperson is not competent to diagnose the etiology of tinnitus but argues that the Board did not make a "sweeping generalization that *all* laypersons lack the competenc[e] to provide etiology opinions for *all* medical conditions; rather, [the Board made] a determination that addresses lay nexus evidence for tinnitus, *specifically*, due to the nature of the condition." Sec'y Br. at 17. The Secretary further contends that a theory of secondary service connection for tinnitus was not reasonably raised by the record because VA Training Letter 10-02 is too general in its discussion of tinnitus to make a link between hearing loss and tinnitus more than speculative; there is some indication in the record that tinnitus may have been caused by postservice noise exposure to machinery and heavy equipment; and, the grant of service connection for hearing loss alone is insufficient to suggest a link between the two conditions. *Id*. at 20-21. Additionally, the Secretary argues that, even if the Board erred in its treatment of the appellant's lay evidence, remand is not warranted because, when rendering the May 2009 opinion that the appellant's condition is less likely

6

than not related to service, the VA audiologist considered the appellant's lay statements regarding the onset and continuity of his tinnitus symptoms. *Id*. at 23.

## B. Statutory Interpretation

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. *See Davidson v. Shinseki*, 581 F.3d 1313 (Fed. Cir. 2009); *Hickson v. West*, 12 Vet.App. 247, 253 (1999); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); 38 C.F.R. § 3.303(a) (2014) ("Each disabling condition shown by a veteran's service records, or for which he or she seeks a service connection[,] must be considered on the basis of . . . *all* pertinent medical and lay evidence." (emphasis added)).

For chronic diseases included in the provisions of 38 U.S.C. § 1101 and 38 C.F.R. § 3.309(a), service connection may also be established by showing continuity of symptoms, which requires a claimant to demonstrate (1) a condition "noted" during service; (2) evidence of postservice continuity of the same symptoms; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptoms. 38 C.F.R. § 3.303(b); *see Walker*, 708 F.3d at 1340 (holding that only those chronic diseases included in 38 C.F.R. § 3.309 are subject to service connection by continuity of symptoms described in 38 C.F.R. § 3.303(b)); 38 C.F.R. § 3.309(a) (2014) (including "[o]ther organic disease of the nervous system" as a chronic condition for which service connection may be established by continuity of symptoms); *see also Davidson*, 581 F.3d at 1313; *Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that whether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board). Continuing symptoms, not treatment, must be the focus of the evidentiary analysis. *Wilson v. Derwinski,* 2 Vet.App. 16, 19 (1991).

"Chronic disease" is statutorily defined in 38 U.S.C. § 1101, which identifies several chronic diseases by name, including "[o]rganic diseases of the nervous system," and "such other chronic diseases as the Secretary may add to this list." 38 U.S.C. § 1101(3). The Secretary's list is found in regulation at 38 C.F.R. § 3.309(a) and is substantially similar to the statutory list. *See Sacks v.*

*West*, 11 Vet.App. 314, 317 (1998) ("[T]he enumerated list [in § 3.309(a)] is identical to the list of chronic diseases enumerated in 38 U.S.C. § 1101(3)–that is, the Secretary has opted not to add *any* diseases to those listed in the statute." (emphasis in original)). The regulation adds parenthetical explanations for certain entries, including an explanation for "[c]ardiovascular-renal disease, including hypertension," which the regulation explains is "an early symptom long preceding the development of" arteriosclerosis, nephritis, and organic heart disease, and, thus, "disabling hypertension within the 1-year period will be given the same benefit of service connection as any of the chronic diseases listed." 38 C.F.R. § 3.309(a). The regulation also changes the entry for "[o]rganic diseases of the nervous system" to "[o]ther organic diseases of the nervous system." *Id.* By internal agency materials, the Secretary has made clear that sensorineural hearing loss is considered subject to § 3.309(a) as an "[o]rganic disease[] of the nervous system." Appendix at 10 (VA Training Letter 10-02). Tinnitus is not specifically identified on the list in either section 1101 or § 3.309. The appellant argues that tinnitus qualifies as a "chronic disease" under *Walker* because it is an "[o]rganic disease[] of the nervous system."

In *Walker*, the veteran argued that bilateral hearing loss, although not enumerated in section 1101 or § 3.309, was medically "chronic" and therefore qualified as a "chronic disease." 708 F.3d at 1336. The Secretary countered that only diseases expressly listed in § 3.309(a) are eligible for presumptions under § 3.303(b). *Id.* at 1337. After reviewing the statutory scheme at length, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) concluded that the Secretary's interpretation was not invalid. *Id.* at 1338. In addressing bilateral hearing loss, the Federal Circuit held:

> Even though § 3.303(b) does not contain a specific cross reference to § 3.309(a), we think a harmonious reading of §§ 3.303(b), 3.307(a) and 3.309(a) supports an implicit cross reference to § 3.309(a) in § 3.303(b). For the reasons explained above, we conclude that properly interpreted, and consistent with the Secretary's interpretation, § 3.303(b) is constrained by § 3.309(a), regardless of the point in time when a veteran's chronic disease is either shown or noted, in that the regulation is only available to establish service connection for the specific chronic diseases listed in § 3.309(a).

*Id*. The Federal Circuit, however, did not address the issue presented here–whether a condition–tinnitus–although not listed specifically in the statute or the regulation, is encompassed

8

by the listed category of "[o]rganic diseases of the nervous system." Notably, the statute gives the Secretary the authority to add "other chronic diseases" to the statutory list.

It is undisputed by the parties, and the Court agrees, that the phrase "[o]rganic diseases of the nervous system," contained in both section 1101(3) and § 3.309(a), is ambiguous. *See Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) ("If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning."). The regulation mirrors the statute, *see Sacks*, 11 Vet.App. at 317, and neither defines the phrase. The Secretary argues that the Court should look to the Agency's interpretation of this language, provided in VA Training Letter 10-02. "It is well established that courts should defer to an agency's interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter." *Mulder v. Gibson*, 27 Vet.App. 10, 16 (2014) (citing *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997))). "The Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference by the courts." *Smith*, 451 F.3d at 1349. "Substantial deference to an agency's interpretation of an ambiguous regulation is not due, however, if the regulation in question merely parrots the statute." *Mulder*, 27 Vet.App. at 16. In circumstances where the regulatory language mirrors the statute, "'the question presented is one of statutory interpretation.'" *Id*. (quoting *Sharp v. Shinseki*, 23 Vet.App. 267, 275 (2009)).

The language at issue found in § 3.309(a) mirrors the language used by Congress in section 1101(3). Neither the statute nor the regulation defines or clarifies the phrase. Accordingly, although VA Training Letter 10-02 may be said to be interpreting regulatory language, the portion of the regulation at issue parrots the statute. *See Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) (regulation merely parrots statute where it "just repeats two statutory phrases and attempts to summarize the others" and "gives little or no instruction on a central issue"). The question at hand is therefore one of statutory interpretation. *See id.*; *Mulder*, 27 Vet.App. at 16; *Sharp*, 23 Vet.App. at 275.

Lacking the formalities of notice-and-comment rulemaking, the Secretary's Training Letter 10-02 is entitled to deference "only in so far as it has 'the power to persuade.'" *Wanless v. Shinseki*,

618 F.3d 1333, 1338 (Fed. Cir. 2010) (applying *Skidmore*, 323 U.S. at 140, to the Secretary's use of a VA General Counsel Opinion to interpret statutory provision in 38 U.S.C. § 5313); *see Sursely v. Peake*, 551 F.3d 1351 (Fed. Cir. 2009) (where regulation essentially parroted statute, the opinion letter of the Director of VA's Compensation and Pension Service was viewed not as an interpretation of the VA's own regulation–which would be accorded substantial deference under 38 U.S.C. § 7292(d)(1) and *Auer*, 519 U.S. at 461-63–but rather as an interpretation of the statute itself, and the Court held that the Director's opinion did not have the "power to persuade" as required by *Skidmore*).  The U.S. Supreme Court in *Skidmore* stated:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend *upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade*, if lacking power to control.

323 U.S. at 140 (emphasis added).  Therefore, the degree to which the Secretary's interpretations of ambiguous statutes are given deference "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, . . . and all those factors which give it power to persuade." *Id.*

The Secretary maintains that the basis for his policy to exclude tinnitus as encompassed within "[o]ther organic disease of nervous system" is that tinnitus is a symptom rather than an illness or disease, and the classification as a symptom rather than a disease "is consistent with" the definition of "tinnitus" provided by NIDCD, i.e., the definition in a fact sheet from the National Institutes of Health.  Sec'y Sept. 8, 2014, Suppl. Mem. at 3 (quoting Appendix at 4).

The appellant contends that the Secretary's position is inharmonious with other provisions of the veterans benefits scheme and a constrictive interpretation unfavorable to veterans.  The appellant argues that the Secretary's interpretation against the inclusion of tinnitus within § 3.309(a) based on the Training Letter's description of tinnitus as a symptom (1) ignores the nature of tinnitus, which is described in the Training Letter itself as a condition that "originates in the central nervous system"; (2) is inconsistent with VA's benefits scheme that identifies tinnitus as a compensable disability, without requiring that it occur in conjunction with any other condition or disease,

10

38 C.F.R. § 4.87; and (3) is inconsistent with the fact that the Secretary has recognized hypertension as a symptom of another disease, including organic heart disease, yet has included it in § 3.309(a) and given it the presumption afforded chronic conditions. App. Sept. 29, 2014, Resp. at 4, 7-8. Regarding this last point, the appellant asserts that, even if the Court agrees that tinnitus is a symptom and not a disease, the Court should reject the Secretary's interpretation that § 3.309(a) does not extend to symptoms because § 3.309 extends to hypertension as a symptom, without requiring that any related disease manifest during or after the presumptive period. *Id*. at 8.

The Training Letter states, in part:

1. Sensorineural hearing loss may be service-connected as a presumptive condition under 38 [C.F.R. §] 3.309(a) because it is an organic disease of the nervous system.

2. Unlike hearing loss, tinnitus may not be service-connected as a presumptive condition under 38 [C.F.R. §] 3.309(a) because it is a subjective symptom rather than an organic disease of the nervous system.

Appendix at 10. The Training Letter also describes both sensorineural hearing loss and tinnitus:

Sensorineural hearing loss (SNHL) (also called neurosensory hearing loss, and sometimes informally called nerve deafness) is due to a problem in the inner ear or in the auditory (Cranial Nerve VIII) nerve between the inner ear and the brain. It most often occurs when the tiny hair cells in the cochlea are injured, and there may also be nerve fiber damage. The two most common causes of SNHL are presbycusis (age-related hearing loss) and noise-induced hearing loss (caused by chronic exposure to excessive noise). . . .

. . . .

E. Tinnitus

1. What is it? Subjective tinnitus is a phantom auditory sensation that is perceieved as a sound when there is no outside source of the sound. It is a symptom rather than an illness or disease. Tinnitus may be perceived in one or both ears or anywhere in the head, and although it is commonly perceived in the ears, it originates in the central nervous system.

. . . .

3. What are its causes? Tinnitus is a symptom that is associated with many conditions, including acute noise exposure and noise-induced hearing loss.

11

Sensorineural hearing loss, such as from presbycusis or acoustic trauma, is the most common cause of tinnitus. However, the etiology of tinnitus often cannot be identified, because there are so many potential causes that it is impossible to select one. In addition to sensorineural hearing loss, other known causes are Meniere's disease, head injury (including traumatic brain injury), otosclerosis, cerebrovascular disease, neoplasms, numerous types of ototoxic medications, hypertension, kidney disease, dental disorders, and many other medical conditions.

*Id*. at 4-5.

In addition to the above statement acknowledging both that tinnitus "originates in the central nervous system" and that "[s]ensorineural hearing loss, such as from presbycusis or acoustic trauma, is the most common cause of tinnitus," the Training Letter, in its discussion of VA examinations, recognizes that tinnitus may be associated with hearing loss. For example, the Training Letter requires that a VA audiologist "indicate whether tinnitus is as likely as not a symptom associated with hearing loss" if there "is a claim and/or current complaint of tinnitus" and "if hearing loss is present. *Id*. at 15. The Training Letter also states that "acoustic trauma means sudden hearing loss (and possibly tinnitus) resulting from a single short-term exposure to an extremely loud noise, such as an explosion or gunshot" and notes that "VA defines acoustic trauma in the stricter sense of a short-term severe episode of loud noise exposure that causes damage to the inner ear." *Id.* at 15-16.

The Secretary's position excluding tinnitus from an "organic disease of the nervous system," as expressed in VA Training Letter 10-02, is not persuasive, and the Court does not adopt it, for several reasons. First, to the extent the Secretary bases his position on tinnitus being a mere symptom, this is inconsistent with a key component of VA's benefit scheme, the VA rating schedule, specifically 38 C.F.R. § 4.87, which identifies tinnitus as a disability subject to compensation payments based on the level of severity of tinnitus without requiring that the tinnitus occur in conjunction with any other condition or disease. Second, the Training Letter is internally inconsistent, and while the Secretary focuses on language from the Training Letter that superficially appears adverse to the veteran's position, other language supports the veteran's proposed interpretation. Third, the thoroughness of the Secretary's consideration is not evident, given that the Training Letter does not discuss the medical evidence upon which it relies and appears to overlook material points within that medical evidence. Fourth, descriptions of tinnitus in VA rulemaking and a VA General Counsel Precedent Opinion provide support for defining tinnitus as an organic disease

12

of the nervous system. Finally, a review of post-*Walker* Board decisions on whether tinnitus is an "organic disease[] of the nervous system" under § 3.309 further undermines the persuasiveness of the Secretary's argument. We address each of these points in turn.

First, as the appellant argues, the Training Letter's reasoning is inconsistent with the treatment of tinnitus in the veterans benefits scheme. *See Arneson v. Shinseki*, 24 Vet.App. 379, 383 (2011) (stating that statutory terms are interpreted "'in their context and with a view to their place in the overall statutory scheme'" (quoting *Tyler v. Cain*, 533 U.S. 656, 662 (2001))). The central conceit of the Training Letter, with regard to tinnitus, is that tinnitus cannot be considered an organic disease of the nervous system for VA compensation purposes because it is "a symptom rather than an illness or disease." Appendix at 4. However, VA treats tinnitus as an independent, stand-alone illness or disease rather than simply a symptom for VA compensation purposes. *See* 38 C.F.R. § 4.87, Diagnostic Code (DC) 6260 (2014) (defining "tinnitus" as one of several independent, listed disabilities subject to VA compensation payments based on level of disability). If VA viewed tinnitus as merely a symptom of another condition and not a legitimate, independent illness, disease, or disability itself, tinnitus would not be subject to compensation in its own right as a service-connectable disability. *See* 38 U.S.C. § 1110 (compensation will be paid "[f]or disability resulting from personal injury suffered or disease contracted in line of duty"); *Sanchez-Benitez v. West*, 13 Vet.App. 282, 285 (1999) ("[P]ain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted."), *appeal dismissed in part and vacated in part on other grounds sub nom. Sanchez-Benitez v. Principi*, 259 F.3d 1356 (Fed. Cir. 2001); 38 C.F.R. § 3.303(a) (providing that service connection requires facts establishing "a particular injury or disease resulting in disability [that] was incurred coincident with service").

Second, various language in the Training Letter supports the appellant's proposed interpretation. Although the Training Letter bases the exclusion of tinnitus from "organic diseases of the nervous system" on the conclusion that tinnitus is a mere symptom (a dubious assertion, as explained above), the Training Letter acknowledges that tinnitus "originates in the central nervous system." Appendix at 4. Tinnitus thus appears, by the Secretary's admission, to meet the statutory requirement that the condition be "of the nervous system." 38 U.S.C. § 1101(3). Additionally, the

13

Training Letter acknowledges that the "most common cause of tinnitus" is sensorineural hearing loss (Appendix at 5), which the Training Letter defines as an "organic disease of the nervous system" (*id.* at 10). Sensorineural hearing loss, in turn, is described as being "due to a problem in the inner ear or in the auditory . . . nerve . . . [and] most often occurs when the tiny hair cells in the cochlea are injured, and there also may be nerve fiber damage." *Id.* at 3. According to the Training Letter, therefore, tinnitus will most often be due to sensorineural hearing loss, which itself is most often the result of damage to cochlear hairs and potentially the result of nerve damage, a description that VA finds consistent with an organic disease of the nervous system. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 540 (32d ed. 2012) [hereinafter DORLAND'S] (defining "organic disease" as "a disease associated with demonstrable change in a bodily organ or tissue"); *id.* at 1334 (defining "organic" as "pertaining to or arising from an organ or the organs"). Given this information, the Training Letter does not provide persuasive reasons for its differential treatment of the two conditions, calling its reasoning into question. *See Skidmore*, 323 U.S. at 140 (identifying factors affecting persuasiveness of Agency's position as including "the validity of its reasoning").

Third, the thoroughness of the Secretary's consideration is not evident from the Training Letter. *See id.* (identifying factors affecting persuasiveness of Agency's position as including "the thoroughness evident in [the Agency's] consideration"). Although the Training Letter contains a list of references, which include medical fact sheets, the Letter does not discuss the medical evidence upon which it relies for its various medical conclusions. Appendix at 17. For instance, in stating categorically that tinnitus is not a disease, the Letter does not define "disease." But VA has previously defined "disease" as "any deviation from or interruption of the normal structure or function of any part, organ, or system of the body as manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown." VA Gen. Coun. Prec. 82-90 (first released as 1-85 on Mar. 5, 1985) (citing DORLAND'S at 385 (26th ed. 1974)). Further, this Court observed in *Quirin v. Shinseki*, 22 Vet.App. 390 (2009), that VA had identified that a key factor in determining whether a condition is a disease is whether the condition is "'capable of improving or deteriorating.'" 22 Vet.App. at 394 (quoting VA Gen. Coun. Prec. 82-90). Although the NIDCD fact sheet, highlighted by the Secretary in his supplemental memorandum, states that tinnitus is not a disease, it also states that tinnitus sometimes "gets worse,"

14

that patients can work with their doctors to "reduce the severity of the noise and its impact," and that it may be caused when a shock wave of an explosion "damages brain tissue in areas that help process sound" or when "the brain's neural circuits [are] trying to adapt to the loss of sensory hair cells" in the inner ear that "help transmit sound to the brain." Appendix at 18, 19. Based on the above, it is unclear why tinnitus would not be considered a disease for purposes of section 1101(3) and § 3.309(a), particularly because the Training Letter does not discuss this conclusion or provide its source.[2]

Fourth, earlier agency pronouncements support treating tinnitus as an "[o]rganic disease[] of the nervous system" under section 1101(3). *See Skidmore*, 323 U.S. at 140 (identifying factors affecting persuasiveness of Agency's position as including "consistency with earlier pronouncements"). Although neither the 2003 Final Rule nor the VA General Counsel Opinion addressed the specific issue whether tinnitus constitutes an organic disease of the nervous system, both nonetheless discussed the Agency's consideration of the nature of tinnitus and the Agency's description of tinnitus as arising in the brain and as a central nervous condition. As conceded by the Secretary, the VA rulemaking clarified that claimants cannot obtain separate disability ratings for tinnitus in both the left and right ears under DC 6260 and codified VA practice by stating that recurrent tinnitus will be assigned only a single 10% rating "whether it is perceived in one ear, both ears, or somewhere in the head." Sec'y Sept. 8, 2014, Suppl. Mem. at 6-7 (quoting Appendix at 30 (Final Rule)). The Final Rule states that because tinnitus is a single disability arising in the brain, evaluating it as two separate disabilities would violate the principles against pyramiding, 38 C.F.R. § 4.14 (2002), and the principle in 38 C.F.R. § 4.25(b) (2002) that each "single disease entity" is to receive a separate evaluation. 68 Fed. Reg. 25,822, 25,823 (2003) (Final Rule); Appendix at 31. In describing tinnitus as arising in the brain, which is part of the central nervous system (*see* DORLAND'S at 245) and an organ (*see* "Meninges of the Brain," Medline Plus, www.nlm.nih.gov/medlineplus/ency/imagepages/19080.htm (last visited Jan. 28, 2015)), and describing tinnitus as a "single disease entity," the Final Rule thus undermines the persuasiveness of the Secretary's later interpretation that tinnitus is not an organic disease.

---

[2] It is also unclear, based on the Training Letter, why tinnitus may not be considered *both* a symptom of a disease and a disease itself or why the two are necessarily mutually exclusive concepts.

15

To the extent the Secretary argues that tinnitus is a not a condition "of the nervous system," the prior VA pronouncements undermine that argument as well. In the Final Rule, VA describes tinnitus as "a central nervous condition." 68 Fed. Reg. 25,822. Referencing a VA booklet on hearing impairment in the Final Rule, VA explains: "[D]amage in the inner ear may be a precursor for subjective tinnitus, but [] subjective tinnitus is generated within the central auditory pathways. Comparing tinnitus, a central nervous condition, to hearing loss, a disability from damage to an organ of special sense (the ear) is not a valid comparison." *Id.* In the proposed rulemaking, VA explains that "[t]rue (subjective) tinnitus does not originate in the inner ear, although damage to the inner ear may be a precursor of subjective tinnitus" and that it "appears to arise from the brain rather the ears." 67 Fed. Reg. 59,033 (2002) (proposed rule); Appendix at 28. The General Counsel Opinion supports this understanding of tinnitus. *See* VA. Gen. Coun. Prec. 2-03 at paras. 2-3 (May 22, 2003) (discussing rulemaking and collecting medical treatises and manuals describing tinnitus as a disorder of the nervous system); *see also Osman v. Peake*, 22 Vet.App. 252, 256 (2008) (noting that VA General Counsel precedent opinions "constitute a body of experience and informed judgment" on VA's part).

Finally, examining the Board decisions issued since *Walker* undermines the persuasiveness of the Secretary's reasoning. As the Court stated in its order requesting supplemental memoranda from the parties in this case, a majority of Board decisions considering the issue have determined that tinnitus is an organic disease of the nervous system under § 3.309(a). *See, e.g.*, (Title Redacted by Agency), Bd. Vet. App. 1445576, 2014 WL 6875649 (Bd. Vet. App. Oct. 15, 2014) ("As an organic disease of the nervous system, tinnitus is a chronic disease for which a nexus to service can be established by the Veteran's reports of continuity of symptomatology."); (Title Redacted by Agency), Bd. Vet. App. 1445284, 2014 WL 6875356 (Bd. Vet. App. Oct. 10, 2014) ("Service connection may be presumed for certain chronic diseases, such as organic diseases of the nervous system, including sensorineural hearing loss or tinnitus, which develop to a compensable degree within one year after discharge . . . ."). In his supplemental memorandum, the Secretary did not challenge this fact, deeming it "unfortunate" and explaining that these Board decisions are "not indicative of any policy position." Sec'y Sept. 8, 2014, Suppl. Mem. at 5.

16

The Court is mindful that Board decisions are nonprecedential, 38 C.F.R. § 20.1303 (2014), and that the Board is bound by "regulations by the Department, instructions of the Secretary, and the precedential opinions of the chief legal officer of the Department," 38 U.S.C. § 7104(c), and not by other decisions of the Board, or necessarily by VA Training Letters. Nonetheless, the Court is permitted to take judicial notice of facts not subject to reasonable dispute. *Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991). Accordingly, while we may not consider these Board decisions as precedent on the issue of which interpretation of the language at issue is correct, within our *Skidmore* analysis the fact that these decisions were issued provides information about the application of the Secretary's position. Specifically, because the pertinent question is the Secretary's interpretation's "power to persuade," *Skidmore*, 323 U.S. at 140, and because the Secretary has stated that the Training Letter represents VA's "established policy" on the issue (Sec'y Sept. 8, 2014, Suppl. Mem. at 5), the Board decisions indicate the lack of persuasiveness of an established VA policy on the issue and the lack of persuasiveness of the Agency's current position.

The Court additionally notes the appellant's argument that the inclusion of hypertension on the list in section 1101(3) and § 3.309(a), despite that it is a "symptom" of other conditions, shows that interpreting tinnitus as a symptom does not automatically disqualify it as a chronic condition. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citation and internal quotation marks omitted)). The Secretary did not respond to this argument. Because the appellant's argument on this point accepts, as an alternative, the Secretary's description of tinnitus only as a symptom and not a stand-alone illness or disease, an interpretation that, for the reasons listed above, we do not find persuasive, we will not address it further.

Accordingly, the Court concludes that the statutory language is ambiguous, and the Secretary's interpretation is not persuasive and therefore not entitled to respect. The interpretation is not presented with sufficient supporting rationale, is provided in a Training Letter that is internally inconsistent, and fails to reconcile the position in the Training Letter with the VA benefits scheme that considers tinnitus a compensable disability. *See Skidmore*, 323 U.S. at 140; *Sursely, supra*; *see also Sharp*, 23 Vet.App. at 275 (rejecting VA interpretation of ambiguous language where the

17

Secretary offered no support for his interpretation); *Osman*, 22 Vet.App. at 259-60 (rejecting VA General Counsel interpretation that was inconsistent with a prior interpretation).

The Court will therefore adopt the interpretation urged by the veteran, that § 3.309(a) includes tinnitus, at a minimum where there is evidence of acoustic trauma, as an "organic disease[] of the nervous system." *See Sharp*, 23 Vet.App. at 275 ("In the face of statutory ambiguity and the lack of a persuasive interpretation from the Secretary, the Court applies the rule that 'interpretative doubt is to be resolved in the veteran's favor.'" (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994))); *see also Sursely*, 551 F.3d at 1357 ("[E]ven if the government's asserted interpretation of [the statute] is plausible, it would be appropriate under *Brown* [*v. Gardner*] only if the statutory language unambiguously [supported the Government's interpretation]."). The veteran's interpretation is permitted by the statutory language; consistent with the beneficence inherent in the veterans benefits scheme; consistent with the Secretary's recognition of tinnitus as a disability in VA's Schedule of Rating Disabilities, 38 C.F.R. § 4.87, DC 6260; consistent with the Secretary's interpretation in Training Letter 10-02 of "[o]ther organic diseases of the nervous system" as including sensorineural hearing loss, which is due to a problem in the inner ear or in the auditory nerve, and recognition that acoustic trauma causes damage to the inner ear; and consistent with VA's description of the nature of tinnitus in earlier agency pronouncements. *See Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013) (Courts may not "substitute their judgment for that of VA, unless . . . the Secretary's interpretation is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions"); *Sharp*, 23 Vet.App. at 275-76 ("Because [the statute] permits the reading [proposed by the veteran], it is ambiguous and the rule in *Brown v. Gardner* therefore requires the expansive reading of the statute.").

The Court further holds that *Walker* is not dispositive as precluding establishing service connection for tinnitus on the basis of continuity of symptomatology, *see Walker*, 708 F.3d at 1340, and the appellant is not precluded from seeking VA benefits for his claimed tinnitus by way of the chronicity or continuity-of-symptomatology provisions of §§ 3.303 and 3.309(a).

C.  Board Errors

Regarding the appellant's contention that the Board erred in rejecting his testimony concerning the continuity of his symptoms since service, he specifically asserts that the Board improperly relied on the absence of direct postservice medical evidence of tinnitus and improper assumptions about the severity of his tinnitus symptomatology.

The Board found the appellant's statements regarding the continuity of his symptoms not credible based on the lack of medical evidence of tinnitus until many years after service.  The Board may weigh a claimant's lay statements against the absence of contemporary medical evidence, as it did here.  *See Buchanan v. Nicholson*, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006).  However, the Board must first establish a proper foundation for drawing inferences against a claimant from an absence of documentation.  *See Horn v. Shinseki*, 25 Vet.App. 231, 239 (2012).  In *Horn*, this Court held that the absence of evidence cannot be substantive negative evidence without "a proper foundation . . . to demonstrate that such silence has a tendency to prove or disprove a relevant fact." 25 Vet.App. at 239 n.7.  The Court cited precedent "referenc[ing] Federal Rule of Evidence 803(7), to the effect that 'the absence of an entry in a record may be evidence against the existence of a fact if such a fact would ordinarily be recorded.'" *Id*. (citing *Buczynski v. Shinseki,* 24 Vet.App. 221, 224 (2011)); *see also AZ v. Shinseki*, 731 F.3d 1303, 1318 (Fed. Cir. 2013) (citing *Horn* and *Buczynski* with approval and holding that the absence of documentation of a claimed sexual assault in service cannot be considered evidence that the assault did not occur because the failure to report such assaults is typical of active duty victims); *Fagan v. Shinseki*, 573 F.3d 1282, 1289 (Fed. Cir. 2009) (holding that this Court did not err is disregarding an inconclusive medical report because it was "not pertinent evidence, one way or the other," regarding service connection).

Here, the Board found that the lack of medical evidence of a diagnosis of or treatment for tinnitus until many years after service weighed against the appellant's claim and his credibility.  For a number of reasons, the Court finds that the Board's adverse credibility determination lacks adequate reasons or bases and will vacate the Board's decision and remand that matter to the Board. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).  First, the Board failed to provide the requisite foundation for considering the absence of documentation as evidence against the appellant.  The Board failed to analyze, as the above-cited caselaw requires, why the appellant

would reasonably have been expected to report his symptoms to medical providers before 2009. *See AZ*, *Horn*, and *Buczynski*, all *supra*. In this regard, the Board acknowledged the appellant's reason for not mentioning tinnitus during service or not claiming service connection for tinnitus until years after service–that is, the appellant stated that he did not recall being asked whether he had tinnitus while in service or at his separation examination and he was unaware, until recently, that tinnitus was a disability and that he could file for service connection for this condition. The Board then rejected the appellant's statement that he had tinnitus during service because the appellant was treated during service for multiple complaints, including hearing loss, but there were no in-service complaints or treatment relating to tinnitus and the separation examination did not show symptoms or findings of tinnitus. The Board, however, failed to discuss whether the tinnitus symptoms the appellant was experiencing during service were of such severity that it would have been reasonable to expect that he would have sought treatment or complained of tinnitus during service.

In this regard, the Court notes that the VA audiologist in May 2009 noted that the appellant's tinnitus was recurrent but not constant and that it "occurs an average of at least once or twice daily for an average duration of 30 seconds per episode." R. at 133. The Court agrees with the appellant's argument that the Board "made an improper assumption about 'the relative severity, common symptomatology, and usual treatment' of the Veteran's tinnitus by pointing to the absence of medical evidence but without citing to any independent medical evidence to corroborate its finding." App. Br. at 20. The Board erred in failing to support its finding that tinnitus did not exist during service based on the Board's assertion that the appellant would have sought treatment for it or noted it at the time of his separation. R. at 14; *see Kahana v. Shinseki*, 24 Vet.App. 428, 434 (2011) (holding that, where the record is devoid of any medical evidence establishing "the relative severity, common symptomatology, and usual treatment of an ACL [(anterior cruciate ligament)] injury," the Board violated this Court's holding in *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), in stating that, "given the nature of the appellant's injury, some documentation in his SMRs is expected"). Additionally, the Board did not consider the extent of the appellant's tinnitus symptoms when it made an adverse credibility determination based on the appellant's "lack of complaints or treatment for tinnitus to medical professionals for 29 years after discharge from service." R. at 16.

Second, the Court finds inadequate the Board's reasons for finding the appellant not credible because he did not file a claim for VA disability compensation for tinnitus before 2009, although he had previously filed other claims for compensation. R. at 15-16. The Board may not rely solely on the fact that the appellant did not file, at a particular point, a claim for VA benefits for tinnitus at the same time that he filed a claim for another condition: The Board erred in not explaining why filing the tinnitus claim would have been expected to have occurred earlier *in light of the appellant's statements, including that he was unaware that tinnitus was a disability for which he could receive service connection and VA benefits*. The Court also notes that in July 1980 the appellant filed his claim for "hearing" problems and the nature of the hearing problem is not further described on the application. Although it is undisputed that the appellant did not report tinnitus symptoms during an October 1980 VA audiological examination, the Board again failed to take into account whether there was evidence as to the severity of tinnitus symptoms that would have made it "reasonable to expect" that at that time he would have reported tinnitus symptoms to the examiner. Additionally, there may be reasons unrelated to the merits of the claim or unrelated to whether a claimant is experiencing symptoms of the condition that explain why a claimant does not seek VA benefits at the same time that he or she focuses on seeking VA benefits for another condition. The Court concludes that the Board erred in failing to adequately explain why the appellant's decision not to file a claim for service connection for tinnitus before 2009 was pertinent evidence that he was not experiencing symptoms of tinnitus before 2009, and evidence that renders him not credible. *See AZ*, *Fagan*, *Horn,* and *Buczynski*, all *supra*.

Third, in weighing the evidence, the Board stated that "at a post-service VA examination in 1980[,] the Veteran denied tinnitus." R. at 17. In so stating, the Board apparently was attempting to summarize the May 2009 VA audiological examination report and to note that the "VA examiner accurately noted the history." *Id*. The Board's statement that the appellant had "denied tinnitus," however, is incorrect. The May 2009 examiner referred to an October 1980 VA audiological examination report in which the "veteran did not report tinnitus." R. at 447. There is no evidence of record before the Court reflecting a *denial* of tinnitus during service or after service.

Fourth, in addition to finding the lay statements not credible, which the Board will be required to reassess on remand, the Board also determined that "tinnitus is not the type of disorder

21

that a lay person can provide competent evidence on questions of etiology." R. at 18. In making this determination, the Board failed to provide an adequate statement of reasons or bases in light of the governing caselaw. Specifically, the Board did not apply the relevant, current law concerning lay testimony, and the Board's applying the broad rule that lay evidence is incompetent on the issue of in-service causation for tinnitus, without further explanation, is deficient in light of 38 U.S.C. § 1154 and the decision of the Federal Circuit in *Davidson*. R. at 18 (citing only *Rucker v. Brown*, 10 Vet.App. 67 (1997), and *Layno v. Brown*, 6 Vet.App. 465 (1994)).

Section 1154 requires VA to give "due consideration" to "all pertinent medical and lay evidence" when it evaluates a claim for disability benefits. In *Davidson*, the court rejected VA's position that "competent medical evidence" is required whenever the issue involves "either medical etiology or a medical diagnosis." 581 F.3d at 1316 (holding that a veteran's wife was competent to testify that her husband had committed suicide *as a result of* a mental disorder related to service); *see Buchanan*, 451 F.3d at 1336 n.1. On remand, the Board should cite and correctly apply the relevant, current caselaw concerning lay statements. If, on remand, the Board again determines that tinnitus is of the type of disability for which lay evidence concerning etiology is not competent, the Board must fully consider the nature of tinnitus with its observable subjective symptoms and fully discuss its determination, with an analysis of the most recent caselaw. *See Charles v. Principi*, 16 Vet.App. 370, 374 (2002) (noting that "ringing in the ears is capable of lay observation"). If the disability is the type for which lay evidence is competent, the Board must weigh that evidence against the other evidence of record in making its determination regarding the existence of a service connection. *See Waters v. Shinseki*, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (stating that the Board must consider lay evidence, but may give it whatever weight it concludes the evidence is entitled to).

The Court also agrees with the appellant's contention that the Board erred when it failed to consider a theory of secondary service connection for tinnitus based on the appellant's service-connected bilateral hearing loss. The Board is required to consider all theories of entitlement to VA benefits that are either raised by the claimant or reasonably raised by the record. *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008), *aff'd sub. nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). By the time VA requested the May 2009 VA audiological examination, the appellant had already been service connected for sensorineural bilateral hearing loss, and the RO conceded the appellant's

exposure to acoustic trauma during service based on the appellant's military occupation. The results of audiological examinations performed when the appellant entered service in 1976, when he separated in 1980, and when he underwent a VA audiological examination in 2009 revealed the following puretone hearing thresholds:

|  |  | 500 Hertz | 1000 Hertz | 2000 Hertz | 3000 Hertz | 4000 Hertz |
|---|---|---|---|---|---|---|
| Right | 1976 | 5 | 5 | 5 | 5 | 0 |
|  | 1980 | 35 | 40 | 30 | N/A | 30 |
|  | 2009 | 15 | 20 | 25 | 35 | 35 |
| Left | 1976 | 5 | 5 | 5 | 10 | 5 |
|  | 1980 | 35 | 35 | 30 | N/A | 30 |
|  | 2009 | 25 | 30 | 30 | 30 | 35 |

R. at 133 (2009 VA examination report), 312 (1980 separation report), 337 (1976 enlistment report) (all results in decibels).

In VA Training Letter 10-02, the Director of the Compensation and Pension Service instructed that for tinnitus opinions, certain standard guidelines be followed. The Director instructed that certain language be given to examiners:

> b. If there is no record in the service treatment records of tinnitus, but there is a claim or complaint of tinnitus, *the audiologist is asked on the examination protocol to offer an opinion about an association to hearing loss, or an event, injury, or illness in service, if it is within the scope of his or her practice.*
>
> 1) If the examiner states that tinnitus is a symptom that is associated with hearing loss, the tinnitus should be service connected and separately evaluated under [DC] 6260 if the hearing loss is determined to be service connected.

VA Training Letter 10-02 at F.5.b.1 (emphasis added). Additionally, VA Fast Letter 08-10 requires that in requesting an opinion about the etiology of tinnitus, "[i]f hearing loss is also present, the audiologist must provide an opinion about the association of tinnitus to hearing loss." VA Fast Letter 08-10 (Apr. 17, 2008).

Here, the claim for tinnitus and the fact that the appellant was already service connected for hearing loss based on in-service acoustic trauma, and in light of the Training Letter and Fast Letter,

the theory of secondary service connection for tinnitus based on hearing loss was reasonably raised by the record. There is no evidence that VA provided the audiologist with the language specified in VA Training Letter 10-02 or VA Fast Letter 08-10. The Board failed to ensure that the May 2009 audiological report complied with these directives and addressed whether there was an association between the appellant's service-connected hearing loss and his complaints of tinnitus. The Court concludes that the 2009 medical report upon which the Board relied was, therefore, inadequate. *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007). On remand, the audiologist should also opine on the decrease in hearing levels both during and after service in considering any relevant postservice noise exposure.

In pursuing the matter on remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the [Board] will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring the Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## III. CONCLUSION

Upon consideration of the foregoing analysis, the record of proceedings before the Court, and the parties' pleadings, the January 28, 2013, Board decision is VACATED and the claim for service connection for tinnitus is REMANDED for readjudication consistent with this opinion.