http://www.va.gov/vetapp16/Files6/1644929.txt

Citation Nr: 1644929 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 14-36 119 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to service connection for tinnitus. 

2. Entitlement to service connection for peripheral neuropathy claimed as secondary to service-connected diabetes mellitus. 

REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

ATTORNEY FOR THE BOARD

M. Showalter, Associate Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from December 1965 to December 1967. These matters are before the Board of Veterans' Appeals (Board) on appeal from an August 2013 rating decision of the St. Petersburg, Florida Department of Veterans Affairs (VA) Regional Office (RO).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a) (2) (West 2014).

The issue of service connection for peripheral neuropathy claimed as secondary to service-connected diabetes mellitus is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

It is reasonably shown that the Veteran's tinnitus began in service and has persisted ever since service.

CONCLUSION OF LAW

Service connection for tinnitus is warranted. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015). 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, describes VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. The VCAA applies to the instant claim. However, as the decision herein is entirely favorable to the Veteran, VCAA compliance need not be addressed.

Legal Criteria

The Board notes that it has reviewed all of the evidence in the record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claim being decided.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service; the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 
 
Some chronic diseases may be presumed to have been incurred in service if they become manifest to a degree of 10 percent or more within a specified period of time post-service. 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. As an organic disease of the nervous system, tinnitus is presumed to have been incurred in service if it becomes manifest within a year of service. 38 C.F.R. §§ 3.307, 3.309; Fountain v. McDonald, 27 Vet. App. 258, 262-63 (2015).
 
The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may include statements conveying sound medical principles found in medical treatises. Competent medical evidence may include statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board will grant the Veteran's claim if the evidence supports the claim or is in relative equipoise. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Factual Background, and Analysis

Turning to the Veteran's claim for service connection, the Veteran underwent a VA examination in July 2013 to determine the nature and cause of his claimed disability. The diagnosis was tinnitus. Thus, it is clear he satisfies the first element of service connection, namely, a current diagnosis of a disability. Moreover, relative to the Veteran's reports of currently having tinnitus, the Court has held that tinnitus is a disability capable of lay observation. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) (On the question of whether the veteran has had a chronic condition since service, the evidence must be medical unless it relates to a condition as to which lay observation is competent under case law). What remain to substantiate his claim of service connection are the second and third elements, namely, evidence of an injury or disease incurred in service and evidence of a causal relationship (nexus) between the injury or disease incurred in service and the current disability. 

As to evidence of record showing the incurrence of an injury in service, service connection for bilateral hearing loss has already been established based in part on the recognition that the Veteran had been exposed to hazardous noise during his period of service. The VA examiner in July 2013 also acknowledged this fact, specifically attributing the Veteran's hearing loss to acoustic trauma in service. Thus, the Board concludes that the second element for establishing service connection has been satisfied. 

Finally, as to whether or not there is a causal link (nexus) between the currently diagnosed tinnitus and the acoustic trauma in service, the July 2013 VA examiner opined that the Veteran's exposure to noise after service through his civilian employment was more likely the cause of his tinnitus than the acoustic trauma during service. However, in light of inconsistencies in the examiner's report, the Board will accord more evidentiary weight to the Veteran's credible statements made on his original application to the effect that his tinnitus began in August 1966. [The VA examiner apparently believed that, because symptoms of tinnitus had only manifested five to six years prior to the examination, which the examiner stated was reported by the Veteran at that time, tinnitus was attributable to his post-service civilian occupation. However, this opinion is at variance with another assertion of the examiner; namely that, because the Veteran wore hearing protection during his civilian employment, his hearing loss was attributable to acoustic trauma in service. Thus, it is troubling that the examiner opined that hearing loss could be attributed to in-service acoustic trauma while tinnitus could not.]

On longitudinal review of the evidence, the competent evidence of record reasonably supports the Veteran's report that his current tinnitus is traceable back to in-service noise exposure, thus satisfying the third element for establishing service connection. In his March 2012 claim for benefits, the Veteran wrote that the onset of his tinnitus was in August 1966. Overall, persuasive evidence of continuity of symptoms satisfies the third element for service connection. See Walker v. Shinseki, 708 F.3d 1331 (2015) (the continuity of symptoms theory of establishing service connection is limited to disabilities listed as "chronic" in 38 C.F.R. § 3.309(a)); see also Fountain v. McDonald, 27 Vet. App. 258, 271 (2015) (finding that § 3.309(a)'s reference to "organic diseases of the nervous system" includes tinnitus, at least when there is evidence of acoustic trauma).

In summary, the Veteran, having shown an injury in service, a current disability, and a nexus between the two, has satisfied all the elements for service connection. Accordingly, service connection for tinnitus is warranted. 
 
 
ORDER

Service connection for tinnitus is granted. 

REMAND

In regard to the remaining issue of peripheral neuropathy claimed as secondary to service-connected diabetes mellitus, to receive compensation for secondary service connection, the disability for which the claim is made must be proximately due to or the result of service-connected disease or injury, or that service-connected disease or injury has aggravated the nonservice-connected disability for which service connection is sought. 38 C.F.R. § 3.310 (2015); Allen v. Brown, 7 Vet. App. 439, 444-45 (1995). 
 
In December 2013, the Veteran underwent a VA examination to determine the nature and cause of his peripheral neuropathy. However, the Board finds that the examiner did not adequately address whether or not the service-connected diabetes aggravated the Veteran's peripheral neuropathy. While the examiner indicated that the diabetes had not aggravated any other of the Veteran's conditions, there was no explanation as to why the diabetes could not have aggravated the Veteran's peripheral neuropathy. Without addressing more specifically whether or not the service-connected diabetes aggravated the Veteran's peripheral neuropathy, the examination is inadequate for adjudication. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303-04 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

Additionally, in explaining why diabetes mellitus did not cause peripheral neuropathy, the VA examiner stated that the peripheral neuropathy predated the diagnosis of the diabetes mellitus. However, private laboratory results from 2004 supplied by the Veteran's physician suggest findings that may be consistent with an earlier onset date for diabetes mellitus. In other words, it appears that diabetes could have been a factor in the causation question at issue in this claim, but the VA examiner did not discuss or otherwise account for such laboratory findings in the report. Therefore, (in addition to the need to address the question of aggravation, as described above) another medical opinion is also necessary to clarify whether or not the Veteran's diabetes may have developed sooner than, and led to the development of, any peripheral neuropathy. 

Accordingly, the case is REMANDED for the following action:

1. The AOJ should arrange for a VA neurological examination of the Veteran to ascertain whether or not his service-connected diabetes mellitus caused or aggravated any diagnosed peripheral neuropathy. The Veteran's entire record must be reviewed by the examiner in conjunction with the examination. Any indicated tests or studies must be completed. Based on review of the record and examination of the Veteran, the examiner must provide opinions that respond to the following: 

Please identify the likely cause for any diagnosed peripheral neuropathy. Specifically, is it as least as likely as not (defined as a 50% or better probability) that the Veteran's service-connected diabetes caused or aggravated any diagnosed peripheral neuropathy? The opinion must address aggravation, which is defined as an increase in severity beyond the disease's natural progression. The examiner should discuss any clinical findings, such as the private laboratory results from 2004, in the context of whether diabetes mellitus may have predated, and led to the onset of, any peripheral neuropathy. 

The examiner must explain the rationale and reasoning for all opinions and conclusions provided, citing to relevant evidence, supporting factual data, and medical literature, as appropriate. 

2. The AOJ should then review the record, ensure that all development sought is completed (and arrange for any further development suggested by additional evidence received), and readjudicate the claim of secondary service connection for peripheral neuropathy. If any benefit sought remains denied, the AOJ should issue an appropriate supplemental statement of the case, afford the Veteran and his representative the opportunity to respond, and return the case to the Board. 

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
VICTORIA MOSHIASHWILI
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs