Citation Nr: 1722239 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 13-11 907 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Wichita, Kansas


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss. 

2. Entitlement to service connection for tinnitus. 

3. Entitlement to service connection for a respiratory disability, to include residuals of bronchial pneumonia.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Rohde, Associate Counsel

INTRODUCTION

The Veteran, who is the appellant, had active duty service from August 1966 to August 1968. 

These claims come before the Board of Veterans' Appeals (Board) on appeal of an August 2012 rating decision of the RO in Wichita, Kansas, which denied service connection for all the issues on appeal. 

This case was previously before the Board in May 2015, where the Board remanded the issues on appeal for additional development, to include obtaining VA examinations. The development was completed and the matter has properly been returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). 

The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence.


FINDINGS OF FACT

1. The Veteran is currently diagnosed with bilateral sensorineural hearing loss to an extent recognized as a disability for VA purposes.

2. The Veteran was exposed to loud noise during artillery training in service.

3. The Veteran did not exhibit chronic symptoms of bilateral hearing loss during service. 

4. The Veteran did not exhibit continuous symptoms of bilateral hearing loss since service. 
5. Bilateral hearing loss did not manifest within one year of service separation.

6. The Veteran's current bilateral hearing loss is not causally or etiologically related to service.

7. The Veteran currently has tinnitus.

8. The Veteran did not exhibit chronic symptoms of tinnitus during service.

9. The Veteran did not exhibit continuous symptoms of tinnitus since service.

10. Tinnitus did not manifest within one year of service separation.

11. The Veteran's current tinnitus is not causally or etiologically related to service.

12. The Veteran had an upper respiratory infection in 1967 during service with no chronic symptoms.

13. The Veteran does not have, and has not had at any time proximate to or during the course of this appeal, a diagnosis of a current respiratory disability, and does not have residuals of the upper respiratory infection that occurred during service in 1967.


CONCLUSIONS OF LAW

1. Bilateral hearing loss was not incurred in active military service and may not be presumed to have been incurred in active military service. 38 U.S.C.A. §§ 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.326(a), 3.385 (2016).

2. Tinnitus was not incurred in active military service and may not be presumed to have been incurred in active military service. 38 U.S.C.A. §§ 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.326(a) (2016).

3. The criteria for service connection for a respiratory disability, to include residuals of bronchial pneumonia, have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.326(a) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 
473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and 
(5) effective date of the disability.

VA satisfied its duty to notify the Veteran. In March 2012, VA issued the Veteran VCAA notice that informed of the evidence generally needed to support a claim for service connection, what actions needed to be undertaken, and how VA would assist in developing the claim. The notice was issued to the Veteran prior to the August 2012 rating decision from which this appeal arises. Further, the issue was readjudicated in an April 2013 Statement of the Case (SOC), and a July 2016 Supplemental Statement of the Case (SSOC); therefore, there was no defect with respect to the timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

VA satisfied its duty to assist the Veteran in the development of the claim. First, VA satisfied its duty to seek, and assist in the procurement of, relevant records. 
38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, service personnel records, private treatment records, VA examination reports, and lay statements.

Second, VA satisfied its duty to obtain a medical opinion when required. In March 2016, December 2015, and August 2012, VA obtained medical examination and opinion reports concerning whether the currently diagnosed bilateral hearing loss and tinnitus were related to an in-service injury, event, or disease. In December 2015 VA obtained a medical examination report concerning whether the Veteran had a current diagnosis of a respiratory disorder and, if so, was it related to an in-service event, injury, or disease. The medical examination reports are of record. To that end, when VA undertakes to either provide an examination or to obtain a medical opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

As to the issues of service connection for bilateral hearing loss and tinnitus, the VA examination and opinion reports, when taken together, reflect that the VA examiners reviewed the record, considered the medical literature, conducted the appropriate diagnostic testing, considered the Veteran's lay statements, and answered all relevant questions. As to the issue of service connection for a respiratory disorder, to include residuals of bronchial pneumonia, the examination report reflects the VA examiner conducted an in-person examination, reviewed the record, considered the Veteran's lay statements, conducted appropriate diagnostic testing, and answered all relevant questions.

All relevant documentation, including private (medical) treatment records, has been secured or attempted to be secured, and all relevant facts have been developed. There remains no question as to the substantial completeness of the record as to the issue on appeal. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.



Service Connection Law and Regulation

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

The Veteran is currently diagnosed with bilateral sensorineural hearing loss. Sensorineural hearing loss is a "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provisions under 38 C.F.R. § 3.303(b) for service connection based on "chronic" symptoms in service and "continuous" symptoms since service apply to the issue of service connection for bilateral sensorineural hearing loss. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Additionally, where, as here, there is evidence of loud noise exposure during service, tinnitus is considered a "chronic disease." See Fountain v. McDonald, 
27 Vet. App. 258 (2015) (holding that where there is evidence of acoustic trauma, the presumptive provisions of 38 C.F.R. § 3.309(a) include tinnitus as an organic disease of the nervous system). For this reason, the presumptive service connection provisions under 38 C.F.R. § 3.303(b) for service connection based on "chronic" symptoms in service and "continuous" symptoms since service are applicable to the issue of service connection for tinnitus. Walker, 708 F.3d 1331. 

A respiratory disability, to include residuals of bronchial pneumonia, is not a "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303(b) do not apply to the issue of service connection for a respiratory disability, to include the residuals of bronchial pneumonia. 

Under 38 C.F.R. § 3.303(b), service connection will be presumed where there are either chronic symptoms shown in service or continuity of symptomatology since service for diseases identified as "chronic" in 38 C.F.R. § 3.309(a). Walker, 
708 F.3d at 1338-40 (holding that continuity of symptomatology is an evidentiary tool to aid in the evaluation of whether a chronic disease existed in service or an applicable presumptive period). With a chronic disease shown as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b).

In addition, the law provides that, where a veteran served ninety days or more of active service, and chronic diseases, such as organic diseases of the nervous system, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

The Board has thoroughly reviewed all the evidence in the claims file. Although there is an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence).


Service Connection for Bilateral Hearing Loss

The Veteran contends that the current bilateral hearing loss was caused by exposure to loud noise in service, including artillery fire during training. 

At the outset, the Board finds that the Veteran currently has a bilateral hearing loss disability that meets the VA regulatory criteria at 38 C.F.R. § 3.385. A December 2015 VA audiometric examination report shows pure tone thresholds of 40 dB or greater at 2000, 3000, and 4000 Hz in the right ear and 2000, 3000, and 4000 Hz in the left ear. There is no indication that the audiometric results are unreliable or otherwise inadequate. The report conveys that the Veteran was diagnosed with sensorineural hearing loss in both ears. The current disability of bilateral hearing loss is established. See Shedden, 381 F.3d at 1167; 38 C.F.R. § 3.385.

The Board finds that the Veteran was exposed to loud noise during artillery training in service. As noted above, the Veteran has advanced being exposed to the sounds of artillery fire during training, and an August 2015 statement by a fellow service member supports that the Veteran underwent artillery training during service. Further, military personnel records reflect that the Veteran had six months of training in an artillery unit in 1966.

After a review of the evidence, lay and medical, the Board finds that the weight of the evidence demonstrates that bilateral hearing loss symptoms, to include any chronic symptoms, did not have their onset during service, were not continuous since service separation in August 1968, and did not manifest within one year of service separation. Service treatment records are absent for any complaint or diagnosis of bilateral hearing loss. There is no indication from the service entrance or exit examination reports that the Veteran complained of symptoms of hearing loss or auditory problems. The absence of any in-service complaint or diagnosis of bilateral hearing loss is one factor, among others in this case, that weighs against a finding that the Veteran incurred bilateral hearing loss in service or had chronic symptoms of such during service.

The approximately 44 year period between service and the Veteran's first report of bilateral hearing loss is one factor that, along with other factors in this case, weighs against a finding of service incurrence, including by continuous symptoms since service from which service incurrence would be presumed. See Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible; see also Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (the passage of many years between discharge from active service and the medical complaint of a claimed disability is one factor to consider as evidence against a claim of service connection). Additional factors weighing against continuous symptomatology since service include post-service noise exposure of working in a warehouse and aging.

Review of all the evidence of record reflects no complaint, report, or diagnosis of bilateral hearing loss prior to the February 2012 claim, and the subsequent August 2012 VA audiometric examination. As the Veteran separated from service approximately 44 years prior to the February 2012 claim and the August 2012 VA audiometric examination and before reporting the presence of bilateral hearing loss, the evidence does not reflect chronic symptoms of bilateral hearing loss in service or within one year of service separation, or continuous symptoms of bilateral hearing loss since service separation; therefore, presumptive service connection under the provisions of 38 C.F.R. §§ 3.303(b) and 3.309(a) is not warranted.

On the question of relationship (nexus) between the current bilateral hearing loss and service, after a review of the record, including statements made by the Veteran, the August 2012 VA audiologist diagnosed bilateral hearing loss, but opined that it was less likely than not that the Veteran's bilateral hearing loss was due to acoustic trauma during military service. The VA audiologist reasoned that the Veteran was exposed to loud noise in the form of artillery fire under training conditions, but that service treatment records reflected normal auditory function at enlistment and discharge; therefore, the current bilateral hearing loss was not related to service. 

A September 2012 private audiometric examination report reflects that the private audiologist conducted an in-person examination, diagnosed bilateral hearing loss, reviewed the Veteran's service records, and considered the Veteran's post-service noise exposure during employment as a warehouse worker (the Veteran reported wearing noise protection during post-service employment in the 'noisy area' of the warehouse). The private audiologist opined the Veteran's bilateral hearing loss was more likely than not related to service because of a threshold shift at some frequencies between entrance and exit examinations, configuration of hearing loss, and onset of tinnitus. The Board finds that this opinion holds less probative weight that the multiple VA medical opinion reports because the private audiologist bases the opinion only on the threshold shift between entrance and exit exams, and does not address aging or post-service noise exposure as intervening factors of bilateral hearing loss. 

The Veteran was afforded a second VA audiometric examination in December 2015. The VA audiologist conducted an in-person examination, reviewed the Veteran's service records and claims file, conducted diagnostic testing, considered the Veteran's lay statements, and reviewed the September 2012 private audiometric examination report. The VA audiologist opined that the Veteran's hearing was less likely than not adversely affected by acoustic trauma during military service. The VA audiologist reasoned that the service treatment records, after age correction factors were applied, reflected no significant shift in hearing sensitivity during service, and that there was no evidence that the excessive noise had any negative impact on the Veteran's hearing. In a March 2016 medical opinion addendum, the December 2015 VA audiologist clarified that the threshold shift during service 
(10 dB) is not a significant shift according to Department of Defense criteria or according to Occupational Safety and Health Administration standards. The VA audiologist reasoned that "factors such as the Veteran's post military noise exposure and aging effects are likely contributing to the current audiological status." The Board finds the December 2015 audiometric examination report and March 2016 medical opinion addendum to be highly probative because the VA audiologist considered a full and accurate history of the Veteran's disability, and addressed the medical evidence, the Veteran's lay statements, and the intervening factors of aging and post-service noise exposure.
As a lay person, the Veteran is competent to report past and current bilateral hearing loss symptoms; however, in this particular case, where bilateral hearing loss is not reported or shown until years after service separation, and there is evidence of post-service noise exposure and aging, the weight of the evidence presents an absence of symptoms starting in service or of continuous symptoms since service, the Veteran, as a lay person, does not have the requisite medical expertise to render a competent medical opinion regarding the relationship between current bilateral hearing loss and active service. Such an opinion as to causation of bilateral hearing loss beginning years after service involves making findings based primarily on medical knowledge of the etiology of auditory disorders and is a complex medical etiological question dealing with the neurologic system (acoustic trauma and nerve damage) in order to relate bilateral hearing loss back to service, in the absence of continuous symptoms of bilateral hearing loss since service. The Board finds that the Veteran is not competent to render a medical opinion regarding the etiology of bilateral hearing loss, so gives this lay opinion no probative weight.

The Board finds that the weight of the evidence weighs against a finding that bilateral hearing loss is causally or etiologically related to service; therefore, service connection for bilateral hearing loss must be denied. 38 U.S.C.A. § 5107(b); 
38 C.F.R. § 3.102.

Service Connection for Tinnitus

The Veteran contends that the currently diagnosed tinnitus was caused by exposure to loud noise in service, including artillery fire during training. 

At the outset, the Board finds that the Veteran has a current disability of tinnitus. The VA examiner at the August 2012 VA audiological examination diagnosed tinnitus. The Veteran has reported tinnitus, and is competent to state that he has tinnitus. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) ("ringing in the ears is capable of lay observation").

As discussed above, the Board finds that the Veteran was exposed to loud noise during service.
After a review of the evidence, lay and medical, the Board finds that the weight of the evidence demonstrates that tinnitus symptoms, to include any chronic symptoms, did not have their onset during service, were not continuous since service separation in August 1968, and did not manifest within one year of service separation. Service treatment records are absent for any complaint or diagnosis of tinnitus. There is no indication from the entrance or exit examination reports that the Veteran complained of ringing in the ears, any other symptom of tinnitus, and the audiometric examination at discharge from service reflects no hearing problems.

The approximately 44 year period between service separation and the Veteran's first report of tinnitus is one factor that, along with other factors in this case, that weighs against a finding of service incurrence, including by continuous symptoms since service from which service incurrence would be presumed. See Buchanan, 
451 F.3d at 1336 (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible); see also Maxson, 230 at 1333 (the passage of many years between discharge from active service and the medical complaint of a claimed disability is one factor to consider as evidence against a claim of service connection). Additional factors weighing against continuous symptomatology since service include the December 2015 VA audiometric examination and the May 2016 VA addendum opinion, discussed below, that the medical evidence is not consistent with acoustic trauma.

Review of all the evidence of record reflects no complaint, report, or diagnosis of tinnitus prior to the February 2012 claim for compensation and the August 2012 audiometric examination. As the Veteran separated from service approximately 
44 years prior to the August 2012 VA audiometric examination and reporting the presence of tinnitus, the evidence does not reflect chronic symptoms of tinnitus in service or within one year of service separation, or continuous symptoms of tinnitus since service separation; therefore, presumptive service connection under the provisions of 38 C.F.R. §§ 3.303(b) and 3.309(a) is not warranted.

On the question of relationship (nexus) between the current tinnitus and service, after a review of the record, including statements made by the Veteran, the August 2012 VA audiologist opined that it was less likely than not that the Veteran's tinnitus was due to military service. The VA audiologist reasoned that the Veteran's discharge hearing examination did not identify a high frequency cochlear impairment necessary for tinnitus attributable to noise exposure during service. 

The September 2012 private audiologist opined that the tinnitus was more likely than not related to service, and reasoned that the tinnitus was due to noise exposure during service. The Board finds this private opinion of less probative weight compared to the VA audiometric examinations, as it does not discuss the factor of age regarding the Veteran's hearing problems or post-service noise exposure.

The December 2015 VA audiologist opined that the tinnitus was less likely than not related to service. The VA audiologist reasoned that the Veteran's hearing loss was not consistent with acoustic trauma, and there was no evidence of significant shift in hearing thresholds during service; therefore, there is no audiological basis for tinnitus onset during service. 

As a lay person, the Veteran is competent to report past and current tinnitus symptoms and to diagnose tinnitus because its symptoms are observable through the senses; however, in this particular case, where tinnitus is not reported or shown until years after service separation, the weight of the evidence presents an absence of symptoms starting in service or of continuous symptoms since service, and there is evidence of post-service noise exposure and aging, the Veteran, as a lay person, does not have the requisite medical expertise to render a competent medical opinion regarding the relationship between current tinnitus and active service. Such an opinion as to causation of tinnitus beginning years after service involves making findings based primarily on medical knowledge of the etiology of auditory disorders, and is a complex medical etiological question dealing with the neurologic system (acoustic trauma and nerve damage) in order to relate tinnitus back to service, in the absence of continuous symptoms of tinnitus since service. 

The Board finds that the weight of the evidence, both lay and medical, weighs against a finding that tinnitus was causally or etiologically related to service; therefore, service connection for tinnitus must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection for a Respiratory Disability

The Veteran has asserted service connection for residuals of bronchial pneumonia that he contends originate from an upper respiratory infection that occurred during service in 1967. The Veteran's May 1967 service treatment records reflect an upper respiratory infection with symptoms of coughing, fever, and sore throat. The records reflect this illness was resolved and the Veteran returned to duty.

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence is against a finding that the Veteran has current diagnosis of a respiratory disability. The December 2015 VA examiner reviewed the claims file, interviewed the Veteran, conducted a physical examination, performed diagnostic testing, and came to the conclusion that the Veteran does not have a current diagnosis of any respiratory disability. The December 2015 VA examiner had the requisite medical expertise to render this conclusion. The VA examiner reasoned that the Veteran had an upper respiratory infection with viral pharyngitis during service; however, there were no complicating residuals based on the pulmonary function test and no respiratory medication. The Board finds that this medical opinion carries significant probative weight because the VA examiner based this opinion on the service treatment records, lay statements advanced by the Veteran, and the current diagnostic evidence in the form of a pulmonary function test.

The Veteran has submitted post-service private (medical) treatment records as far back as 2001. These treatment records reflect that the Veteran had an upper respiratory infection in September 2001, allergic rhinitis in April 2003, bronchitis with rhinitis in February 2008, an upper respiratory infection with bronchitis in August 2011, and bronchitis in December 2015. This medical evidence does not reflect medical diagnoses of a chronic respiratory disability; rather, it shows five reports of acute respiratory conditions over the last 16 years that resolved without any medical diagnosis of a chronic respiratory disability. 

Service connection may only be granted for a current disability; when a claimed condition is not shown, there may be no grant of service connection. See 
38 U.S.C.A. § 1110; Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability). "In the absence of proof of a present disability there can be no valid claim." See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). See also McClain v. Nicholson, 21 Vet. App. 319 (2007) (holding that service connection can also be warranted if there was a disability present at any point during the claim period, even if it is not currently present); Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that a current disability may include a diagnosis at the time the claim was filed or during its pendency).

The Board finds that the weight of the evidence in this case is against finding a current respiratory disability, to include residuals of bronchial pneumonia, at any point during the claim period or even recent diagnoses prior to the filing of the claim for service connection. See Waters v. Shinseki, 601 F.3d 1274, 1277 (Fed. Cir. 2010) (stating that there must be "medically competent" evidence of a current disability). The VA examiner's opinion provides clear rationale as to why the evidence does not warrant a diagnosis of a respiratory disability, to include residuals of bronchial pneumonia. As discussed above, the private treatment records reflect acute respiratory conditions, but no diagnosis of a chronic respiratory disability.

The lay evidence supporting a finding of a current respiratory disability, to include residuals of bronchial pneumonia, consists of the Veteran's lay statements regarding respiratory disabilities after service that were made to medical professionals, and lay statements made to VA during the claims process. Although the Veteran is competent as a lay person to report symptoms of a respiratory disability, the Veteran is a lay person and, under the facts of this particular case that include no chronic in-service symptoms and no post-service symptoms for many years, does not have the requisite medical training or credentials to be able to be able to diagnose medically complex respiratory disorders. Diagnosing respiratory disabilities involves internal and unseen system processes unobservable by the Veteran, not simply the observation of observable symptoms such as congestion or fever. The Veteran has not been shown to have such knowledge, training, or experience.

For these reasons discussed above, the Board finds that the weight of the evidence demonstrates that the Veteran does not have a current respiratory disability, to include residuals of bronchial pneumonia. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 


ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.

Service connection for a respiratory disability, to include residuals of bronchial pneumonia is denied.





____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs