﻿Citation Nr: 18132478
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 16-02 902
DATE: September 6, 2018
ORDER
Entitlement to service connection for tinnitus is granted.
Entitlement to service connection for a back disorder is granted.
Entitlement to service connection for residuals of frostbite of the left foot is granted.
Entitlement to service connection for residuals of frostbite of the right foot is granted.
FINDINGS OF FACT
1. Resolving all doubt in favor of the Veteran, his currently diagnosed tinnitus had its onset during his military service.
2. Resolving all doubt in the Veteran’s favor, his diagnosed degenerative arthritis of the spine, was incurred as a result of in-service duties.
3. The Veteran is currently diagnosed with frostbite residuals of the right and left foot.
4. During service, while training in Utah, the Veteran spent 5 hours marching overnight in the cold without proper cold weather protection, which resulted in frostbite to both feet.
5. The currently diagnosed frostbite residuals of the right and left foot are related to the in-service frostbite injury.

CONCLUSIONS OF LAW
1. The criteria for service connection for tinnitus have been met. 38 U.S.C. §§ 1101, 1112, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.
2. The criteria for service connection for degenerative arthritis of the spine has been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.
3. The criteria for service connection for residuals of frostbite of the left foot has been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.
4. The criteria for service connection for residuals of frostbite of the right foot has been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303. 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from June 1981 to July 1989. The Board notes that the Veteran’s DD 214 indicates that his character of discharge from service is listed as under other than honorable conditions. However, a Character of Discharge Determination, dated May 16, 2011, noted he was considered to have honorable service from June 11, 1981 to February 24, 1987. However, his discharge is considered under other than honorable conditions from February 25, 1987 to July 20, 1989. As such, the determination letter indicated that the Veteran is entitled to VA healthcare benefits for his June 1981 to July 1989 periods of service.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a rating decision issued in October 2012 by a Department of Veterans Affairs (VA) Regional Office (RO). 
Service Connection
Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996).
Additionally, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as organic diseases of the nervous system and arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. Additionally, tinnitus is deemed an organic disease of the nervous system where there is evidence of acoustic trauma. Fountain v. McDonald, 27 Vet. App. 258 (2015).
Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).
1. Entitlement to service connection for tinnitus.
As an initial matter, the Board finds that the Veteran has a current diagnosis of tinnitus. At a June 2012 VA examination, he stated that a high-pitched noise occurred a couple of times a week and lasts for about 10 minutes at a time. In this regard, tinnitus is a disorder with symptoms that can be identified through lay observation alone. See Charles v. Principi, 16 Vet. App. 370 (2002). As the Veteran has offered competent descriptions of experiencing tinnitus throughout the appeal, and the Board has no reason to doubt his credibility in this regard, the Board finds that he has a current diagnosis of such disorder. Moreover, the June 2012 VA examiner noted that the Veteran’s had recurrent tinnitus.
The Board further notes that the Veteran is competent to describe his in-service noise exposure, and the Board finds his statements in such regard to be credible as such is consistent with the nature and circumstances of his military service as a tactical communications chief and infantryman as demonstrated by his DD 214. Specifically, at his June 2012 VA examination, the Veteran reported that he was exposed to artillery, helicopters, jets, rotary wing aircraft, mortars, small arms fire, and generators with and without hearing protection. He also stated that the onset of tinnitus was in 1983 when he got too close to a cannon. 
Consequently, the remaining inquiry is whether the Veteran’s current tinnitus is related to his military service, to include his acknowledged in-service noise exposure.
The Veteran was afforded a VA examination regarding the etiology of his tinnitus in June 2012. At such time, the examiner noted the Veteran’s reports of in-service noise exposure and the 1983 onset of tinnitus. However, the examiner opined that it was less likely than not that the Veteran’s tinnitus was caused by or a result of military noise exposure. As rationale, the examiner explained that the Veteran’s service treatment records were silent for tinnitus, and his intermittent and random tinnitus that was accompanied by a sensation of acute hearing loss was not entirely consistent with tinnitus from noise exposure. 
In December 2015, a VA examiner opined that it was less likely that the Veteran’s tinnitus incurred in or was caused by the claimed in-service injury, event or illness. As rationale, the examiner explained that tinnitus was not reported on the Veteran’s service treatment records and cannot be claimed secondary to acoustic trauma as there was no hearing loss at separation. The examiner continued that, according to the Noise Manual, “only seldom does noise cause a permanent tinnitus without causing hearing loss.” Thus, there was no nexus of the Veteran’s reported hearing loss and tinnitus to his military service.
Here, the VA examiners noted that there were no complaints of tinnitus in service; however, the rationale for such opinions focused mostly on the Veteran’s hearing loss. Consequently, the Board accords no probative value to such opinions. 
Rather than remanding the matter for an etiological opinion, the Board finds that the Veteran’s statements at his April 2012 VA examination establishes the nexus element. Specifically, the Veteran provided a history of being exposed to hazardous noise during active service, and he stated that he first noticed the ringing in his ears during service and it has been reoccurring ever since. 
As noted above, tinnitus is a disability capable of lay observation, which includes as to the date of onset. As the Veteran stated that he had tinnitus during his active service and has continued to experience such condition since such time, and the Board has no reason to doubt his credibility, the nexus criterion is satisfied. 
In sum, and resolving all doubt in the Veteran’s favor, the Board finds that his current tinnitus had its onset during his active duty service. Therefore, service connection for tinnitus is warranted. 
2. Entitlement to service connection for a back disorder.
The Veteran contends that his back disorder is related to his military service. In this regard, he reports that he injured his back as a result of the car accident in 1984, and he had repetitive trauma injuries to his back related to his parachute jumps. With regards to his parachute jumps, he reports that he served with the 3rd Ranger Battalion completing between 60 and 100 jumps and earning a Senior Parachutist Badge and assignment as a jumpmaster. The majority of these jumps were completed with full pack including parachute, rucksack containing a radio with extra batteries, and a loaded weapon totaling 60 to 80 pounds. He reports that, in his jumps, he was required to carry extra weight because he was the communications specialist. He further indicated that he had as many as 300 parachute jumps and numerous repelling jumps from helicopters. 
After separating from service, the Veteran indicated that he continued to have pain after discharge and he sought treatment for back complaints from the VA, but was unable to receive care at such time. The Veteran indicates that none of his post-service employment required significant heaving lifting, but his back was always hurting. He contends that he has had the same type of pain since his separation from service, but he self-medicated and spent a lot of time resting on his back to relieve the pain. 
As an initial matter, the Veteran was diagnosed with degenerative arthritis of the spine in June 2012, which was confirmed at his January 2016 VA examination. See January 2016 VA examination report. Therefore, the Board finds that he has a current diagnosis of the back. 
The Veteran’s service treatment records reveal that he was in a motor vehicle accident in 1984. Moreover, the Veteran completed several flight physicals due to his in-service duties. A December 1986 X-ray revealed short segment dextroscoliosis mid thoracic spine. A June 1987 X-ray showed a dextroconvex scoliosis of the dorsal spine and a December 1988 X-ray showed mild dorsolumbar levoscoliosis. While his 1989 separation examination reflected a normal clinical evaluation of his spine, his reported in-service duties are consistent with the circumstances of his service. Specifically, the Veteran’s DD Form 214 documents his military occupational specialty (MOS) as a tactical communications chief and infantryman. Moreover, he was the recipient of a Pathfinder Badge and Senior Parachutist Badge. In a January 2016 statement from the Veteran, he credibly described his duties requiring him to complete jumps with full pack including parachute, rucksack containing a radio with extra batteries, and a loaded weapon totaling 60 to 80 pounds, and he was required to carry extra weight because he was the communications specialist. The Veteran is competent to describe his in-service duties, and the Board finds his statements to be credible as such is consistent with the nature and circumstances of his military service. 38 U.S.C. § 1154(a). 
Consequently, the only remaining inquiry is whether the Veteran’s back disorder is related to his military service.
On this question, the Veteran was afforded an examination by a VA neurologist in January 2016. At such time, the Veteran reported that he first began having back pain in the summer of 1984 following a motor vehicle accident, and he went to jump school that same summer. He stated that he would aggravate his back when he jumped out of airplanes. Following separation from service, he worked as an electrician on commercial buildings and he denied work related low back injuries. However, over the years his back pain got worse and he finally sought medical attention in 2008 and stopped working in 2009 because of the low back pain. 
The VA examiner opined that the Veteran’s low back condition was not caused by or a result of active duty, to include his parachute jumps in the military. As rationale, the examiner explained that there was absolutely no evidence of any back problem or injury in active duty and no records of back pain for many years following separation. The examiner continued that, the Veteran denied recurrent back pain on his reports of medical history in 1985, 1987, and 1989. Moreover, the first back complaints were documented 20 years after separation when he reported that his back pain had been going on for 6 months. Therefore, the examiner concluded that the Veteran’s present low back condition was unrelated to the parachute jumps in the military and was more consistent with age and his job as an electrician.
However, in January 2016, the Veteran submitted an opinion from his private orthopedic physician, Dr. D.M. Following an interview with the Veteran and a thorough review of his service treatment records, VA treatment records, VA examinations, and private treatment records, Dr. D.M. opined that it was at least as likely as not that the Veteran’s present thoracolumbar symptoms were the direct result of the injuries/events that occurred while he as on active duty. As rationale, Dr. D.M. explained that, the Veteran earned a Senior Parachutist Badge, which required extensive survival training, and a minimum of 30 parachute jumps just to qualify for the Ranger School. He continued that, the Veteran made between 60 to 80 parachute jumps, and as a Senior Parachutist Airborne Ranger, he subsequently performed a combined 300 fun jobs that also included rapid repelling down ropes from helicopters. The Veteran reported that he had various parachute jumps where he landed on the heels of his feet rather than the balls of his feet, and then directly on his buttocks. In addition, the Veteran carried an extra 60 pounds above what the normal Ranger Airborne Parachutist had in his rucksack because of the radio equipment he was required to carry due to his MOS as a tactical communications specialist. 
In further support of his rationale, Dr. D.M. referenced medical literature regarding parachute injuries. In this regard, an article entitled “Miliary parachuting injuries: a literature review” indicates that the amount of equipment being carried by the parachutist is important. The article also indicates that the height and weight of the parachutist also had an effect on injury rates. Dr. D.M. noted that the parachute impact was the equivalent of jumping off a 9 to 12-foot wall and a parachutist descended at the speed of 18 feet per second. Dr. D.M. further stated that the Veteran reported that he landed on the heels of his feet and then directly onto his buttocks. Dr. D.M. stated that the Veteran’s landing transmitted the full impact onto his lumbar region. As noted in the article, the main causes of the most common injuries involved torsion plus landing thrusts, and backward landing. The article continues that, the paratroopers landing on his buttock could experience compression fractures of the vertebrae. Thus, the examiner concluded that landing backwards results in the parachutist “sitting down” on his buttocks. Such landing resulted in a particular force across the lumbar spine. After reviewing such article, Dr. D.M. explained that it was obvious that a parachutist could experience a wide variety of musculoskeletal as well as head and spine cord injuries. 
After a careful review of the record, the Board finds that the evidence of record is at least in equipoise as to whether the Veteran’s diagnosed degenerative arthritis of the spine was incurred as a result of in-service duties. In this regard, both the January 2016 VA examiner and Dr. D.M. are competent medical professionals, and considered the totality of the evidence as well as medical principles in rendering their opinions. Therefore, the Board resolves all doubt in the Veteran’s favor and finds that his back disorder was incurred as a result of in-service duties. Consequently, service connection for such disorder is warranted.
3. Entitlement to service connection for residuals of frostbite of the left foot.
4. Entitlement to service connection for residuals of frostbite of the right foot.
The Veteran contends that his residuals of frostbite of the right and left foot are related to his military service. In this regard, he reports that, in November 1985, he was in Ranger School at the Dugway Proving Ground in Utah for 2 weeks of training where he was required to march overnight in the snow. However, he did not wear the proper cold weather boots in the 5 hour march and was unable to warm his feet the following day. The Veteran continues that, he reported to sick hall the next day and was told that he had frostbite on both feet. He contends that his feet have never been the same since the frostbite injury and he continues to suffer from aches and pains in his feet.
As an initial matter, the Veteran was diagnosed with frostbite residuals to include dermatomycosis and bilateral toes onychomycosis in July 2011. See July 2011 VA examination report. Therefore, the Board finds that he has a current diagnosis of frostbite residuals of both feet. 
The Veteran’s service treatment records reveal that, in November 1985, he went to the Dugway Proving Grounds health clinic and was diagnosed with frostbite in both feet. Although his June 1989 separation examination indicates that his feet were normal, the Board finds that the Veteran’s feet were frostbitten during service. Consequently, the only remaining inquiry is whether the Veteran’s residuals of frostbite of his right and left foot is related to his military service.
The Veteran was afforded a cold injury protocol VA examination in July 2011. At such time, the Veteran reported that he was in Ranger school in Utah and sustained frostbite of both feet while on evening patrol. He stated that his feet peeled and he developed chronic callous conditions and fungal infections on both feet. On physical examination, the examiner noted the Veteran’s fungus infection on both feet and bilateral toes onychomycosis. The examiner diagnosed the Veteran with residuals of frostbite in both feet, to include bilateral dermatomycosis and bilateral toes onychomycosis. Although the examiner was able to view the Veteran’s service treatment records, his entire C-file was not available, thus, the examiner was unable to render an etiology opinion. 
In April 2012, a VA examiner noted that the Veteran was seen in November 1985 for first degree frostbite. The examiner further noted that the Veteran was treated for tinea pedis in 2008 and 2009, and complained of athlete’s foot in 2011. The examiner stated that she could not provide a nexus without resorting to mere speculation. As rationale, she noted that the Veteran’s service treatment records noted first degree frostbite in 1985 and the July 2011 VA examiner diagnosed the Veteran with residuals of frostbite on both feet. However, the April 2012 examiner explained that the Veteran’s treatment records were silent from 1985 to 2007. She continued that, the Veteran was diagnosed with athlete’s foot with no mention of a cold injury or the previous frostbite. Moreover, she stated that athletes foot and onychomycosis are very common in the general population whether or not there had been a cold injury.
However, in January 2016, the Veteran submitted an opinion from his private orthopedic physician, Dr. D.M., who noted his experience with frostbite injuries. At such time, Dr. D.M. opined that it was at least as likely as not that the Veteran’s present bilateral foot conditions were the direct result of his November 1985 frostbite injury. As rationale, Dr. D.M. explained that the Veteran continued to experience infections on both feet since the November 1985 frostbite injury. In this regard, Dr. D.M. noted that the Veteran reported that he developed chronic callous conditions as well as fungal infections of both feet after the initial injury. Dr D.M. further explained that the Veteran’s in-service injury and subsequent complications because the initial treatment was delayed until the next morning. This was due to the fact that, in 1985, the Veteran finished the march through the snow in a field facility that did not have electricity. As a result, the Veteran did not receive proper treatment in a timely fashion, which resulted in greater damage to his feet.
(Continued on the next page)
 
After a careful review of the record, the Board finds that the evidence of record is at least in equipoise as to whether the Veteran’s residuals of frostbite in both feet was incurred as a result of his November 1985 in-service injury. In this regard, both the April 2012 VA examiner and Dr. D.M. are competent medical professionals, and considered the totality of the evidence as well as medical principles in rendering their opinions. Therefore, the Board resolves all doubt in the Veteran’s favor and finds that his residuals of frostbite in both feet was incurred as a result of his November 1985 in-service injury. Consequently, service connection for such disorders is warranted.
 
C. BOSELY
Acting Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Brennae L. Brooks, Associate Counsel