﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 200428-83652
DATE: August 31, 2020

ORDER

Entitlement to service connection for a low back disability, as secondary to multiple sclerosis (MS), is denied.

Entitlement to service connection for an acquired psychiatric disability, to include as secondary to service-connected MS, is denied.

Entitlement to an initial rating in excess of 30 percent for MS is denied.

Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) is denied.

REMANDED

Entitlement to service connection for a cardiac disability, to include as secondary to service-connected MS, is remanded.

Entitlement to special monthly compensation (SMC) based on requiring aid and attendance or by being housebound. is remanded.

FINDINGS OF FACT

1. The Veteran’s low back disability is not shown to be caused or aggravated beyond the natural progression by the service-connected bilateral MS.

2. The Veteran’s acquired psychiatric disability is not shown to be causally or etiologically related to any disease, injury, or incident in-service, or caused or aggravated beyond the natural progression by the service-connected MS disability. A psychosis was not diagnosed within one year of separation.

3. The Veteran’s MS involves manifestations of mild, subjective neurological symptoms that do not warrant a separate rating in excess of 30 percent; all other manifestations of MS that warrant separate ratings have been assigned such evaluations.

4. The probative evidence does not show that the Veteran’s service-connected disabilities preclude him from securing and following substantially gainful employment. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for low back disability, as secondary to MS, are not met. 38 U.S.C. § 1110; 38 C.F.R. § 3.310. 

2. The criteria to establish service connection for an acquired psychiatric disability, to include as secondary to the Veteran’s service-connected MS, are not met. 38 U.S.C. §§ 1101, 1131, 1154, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.310. 

3. The criteria for a disability rating higher than 30 percent for multiple sclerosis is denied. 38 U.S.C. §§ 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.124a, Diagnostic Code (DC) 8018. 

4. The criteria for establishing a TDIU have not been met. 38 U.S.C. §§ 1155, 5110(a), (b)(2); 38 C.F.R. §§ 3,102, 3.340, 3.341, 4.3, 4.16. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1970 through June 1971. Rating decisions were issued under the legacy system in April 2006, August 2013, June 2014 and November 2015 and the Veteran submitted timely notices of disagreement. 

In August 2009, the Veteran testified at a hearing before a Veterans Law Judge. In June 2013, the Board denied the claim for service connection for a low back disability, as secondary to MS, and the Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (Court). By a January 2014 Joint Motion for Remand (JMR), the Veteran’s claim for service connection for a low back disability was remanded to the Board, along with his claim for service connection for MS. His claim for service connection for MS was later granted in a November 2015 rating decision.

The Board has previously remanded these claims in March 2009, May 2009, October 2009, September 2011, and December 2015. In May 2018, the Board again remanded the claims for additional development.

In April 2020, the agency of original jurisdiction (AOJ) issued a supplemental statement of the case (SSOC). The Veteran opted the claims into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a May 2020 VA Form 10182, Decision Review Request: Board Appeal, identifying the April 2020 SSOC. Therefore, the April 2020 SSOC is the decision on appeal. 

In the May 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Evidence Submission docket. Therefore, the Board may only consider the evidence of record at the time of the April 2020 SSOC, as well as any evidence submitted by the Veteran or his representative with, or within 90 days from receipt of, the VA Form 10182. 38 C.F.R. § 20.303.

Service Connection

Generally, service connection requires evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus, or link, between the current disability and the in-service disease or injury. 38 C.F.R. § 3.303(a).

Alternatively, secondary service connection may be granted for a disability that is proximately due to, the result of, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310. Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists, (2) an already service-connected disability, and (3) that the disability for which secondary service connection is sought was either (a) caused or (b) aggravated by the already service-connected disability. See Allen v. Brown, 7 Vet. App. 439 (1995).

1. Entitlement to service connection for a low back disability, as secondary to MS

The Veteran contends that his low back disability is caused or aggravated by his service-connected MS disability.

The Board notes that the Veteran has abandoned his claim of entitlement to service connection for a low back disability on a direct service connection basis in the January 2014 JMR. Therefore, the decision herein considers entitlement to service connection for a low back disability solely on a secondary service connection basis.

The record confirms a current disability of a low back disability. See July 2019 Back Disability Benefits Questionnaire (DBQ). He is also service-connected for a MS. Thus, the first two elements for establishing secondary service connection are satisfied.

The remaining question for the Board is whether his low back disability was caused or aggravated by his service-connected MS. 

In August 2005, treatment notes document the Veteran’s report of a workers’ compensation claim for low back pain as a result of a work injury from a slip and fall.

In a November 2015, after a review of the record, a VA examiner opined it was less likely than not that the Veteran’s low back disability is caused by, or otherwise attributable to his service-connected MS. The examiner explained that his low back disability is related to degenerative joint disease (DJD). MS is unlikely to cause DJD, which is an unrelated pathology. Further, there is no significant paralysis or asymmetrical weakness of the lower extremities, due to MS, which caused altered gait. Additionally, the examiner offered that it is not likely that the Veteran’s low back condition is aggravated by his MS condition. His rationale for this opinion echoed his rationale indicated above. 

In November 2019, a VA examiner opined that the Veteran’s low back disability is less likely than not proximately due to or the result of the Veteran’s MS. The examiner explained that the two disabilities are not medically related as medical literature does not support a medical relationship. The examiner further explained that the Veteran has been presumptively service-connected for MS due to having meningitis during active service. However, based on neurology notes, no diagnosis of MS exists. The Veteran had both pre-service and post-services injuries to his back. Degenerative arthritis is a disease of wear and tear, aging, or develops after injury. The Veteran’s low back injury is most likely due to his history of low back injuries and aging. Nothing in medical literature shows a nexus between a neurological condition and development of degenerative arthritis.

The examiner further opined that it was less likely than not that his low back disability was aggravated beyond its natural progression by his MS. The rationale included that there is no clinical evidence showing that his low back condition has been aggravated by any medical cause, to include MS, or the neurological condition secondary to his meningitis shown in active duty. Any worsening is most likely due to normal aging. MS and his low back disability are unrelated, so aggravation is less plausible.

Considering the aforementioned, secondary service connection for the Veteran’s low back disability is not warranted. The medical evidence is consistently against finding that his low back disability was caused or aggravated by his service-connected MS. The Board finds the November 2015 and 2019 secondary service connection and aggravation opinions are highly probative, as the examiners considered the entirety of the available record, considered the lay statements of record, and submitted competent and adequate explanations for opinions expressed. 

Although the Veteran sincerely believes that his low back disability caused or aggravated by his MS disability, he is a layperson and lacks the training/expertise to opine competently on medical questions such as those presented in the instant case. Lay statements are not competent evidence regarding diagnosis or etiology in such case. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007), Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). 

As the preponderance of the evidence is against finding that the Veteran’s low back disability is proximately caused or aggravated by his MS, his claim for service connection, as secondary to his service-connected MS disability, is denied. 

2. Entitlement to service connection for an acquired psychiatric disability, to include as secondary to service-connected MS. 

The Veteran contends that his acquired psychiatric disability is related to service, to include as secondary to his service-connected MS disability. 

The record contains a current diagnosis of an acquired psychiatric disability. See September 2019 C&P examination. Thus, the first element for establishing service connection has been satisfied.

The remaining questions before the Board are whether there was an in-service incurrence of a disease or injury; and whether the current disability is related to an in-service incurrence, if any. 

In June 1970, service treatment records notate treatment for complaints of dizziness, sharp chest pains, and numbness in arms. It was documented that he had been seen for anxiety and situational depression. The medical assessment was psychoneurotic depression. In April 1971, treatment notes documented the Veteran’s problems at home with related symptoms of anxiety and depression. The psychiatrist diagnosed the Veteran with situational reaction and immature personality. The psychiatric recommended discharge. The Veteran’s separation examination documented the diagnosis of an immature personality disorder. Otherwise, service treatment records are silent for treatment, complaints, or diagnoses related to an acquired psychiatric disability. 

In April 2014, the Veteran was afforded a VA examination for his acquired psychiatric disorder. A diagnosis of unspecified schizophrenia spectrum and other psychotic disorder was documented. Ultimately, the examiner opined that it is less likely than not that his acquired psychiatric disorder was incurred or caused by his in-service injury, event, or disease. The examiner explained that the Veteran’s current diagnosis is not related to the situational depression noted in-service. His depressive symptoms during service were the result of situational stressors at the time. There were no records indicating that the Veteran had psychotic processes, either during his military service, or within two years after his service.

In July 2019, the Veteran was afforded another VA examination his acquired psychiatric disability. The Veteran refused to sign HIPAA paperwork and left the examination before the assessment could be completed. No opinions were offered.

In September 2019, the Veteran was afforded another VA examination. After reviewing the record and interviewing the Veteran, the examiner opined that it is less likely than not that his acquired psychiatric disorder was related to his in-service injury, event, or disease. The examiner explained that the mental health issues during service appeared to have been situational in nature and directly related to his desire to be discharged. Further, it is less likely than not that his acquired psychiatric disability was caused by his service-connected MS. The rationale included that the Veteran first evidenced fixed delusional beliefs in 2000. Although he has a diagnosis of MS, this disability appeared to have mild symptoms and he is not currently engaged in treatment for MS. Further, his MS did not appear to have advanced in any significant degree. While cognitive difficulty can be associated with MS, the Veteran endorsed and evidenced excellent memory. A consultation was conducted with the medical provider that conducted an examination in September 2017, who concurred that his psychiatric condition is not caused by or due to reported MS. The examiner concluded that the available objective evidence is insufficient to demonstrate a linkage between his MS and his acquired psychiatric condition.

Considering the aforementioned, service connection for the Veteran’s acquired psychiatric disability is not warranted. The medical evidence is in agreement against finding a nexus to service, or that his acquired psychiatric disability was caused or aggravated by his service-connected disabilities. The Board finds the etiological and aggravation opinions are highly probative as the examiners considered the entirety of the available record, considered the lay statements of record, conducted in-person interviews with the Veteran, and submitted competent and adequate explanations for opinions expressed. 

The Board recognizes that service connection is also available through a presumptive service connection because his acquired psychiatric disability includes psychoses. Certain chronic diseases, such as psychoses, will be presumed related to service if they were shown as chronic (reliably diagnosed) in-service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if they were noted in service, with continuity of symptomatology since service that is attributable to the chronic disease. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303, 3.307, 3.309. However, the evidence does not support that the Veteran’s acquired psychiatric disability was a chronic disability in-service. As addressed in the April 2014 and September 2019 VA examinations, the Veteran psychiatric symptoms in-service were situational and did not persist. Further, there were no symptoms congruent to his current acquired psychiatric disability, such as schizophrenia or psychosis, documented in-service or shortly thereafter. Thus, a chronic bilateral psychiatric disability in-service has not been demonstrated. 

Relatedly, the Veteran was first treated for an acquired psychiatric disability in the 2000s, which is more than two decades after discharge. Thus, there is no evidence suggesting that the Veteran’s acquired psychiatric disability manifested to a compensable degree within one year after service. The record is also devoid of medical evidence or lay statements demonstrating a continuity of symptomology since service. Although a personality disorder was diagnosed in service, such is not considered a disability for VA compensation purposes. 38 C.F.R. § 3.303(c). As such, presumptive service connection is not available for an acquired psychiatric disability.

As the preponderance of the evidence is against finding that the Veteran’s acquired psychiatric disability is related to service, or is proximately caused or aggravated by his service-connection MS, his claim for service connection for an acquired psychiatric disability, under direct, presumptive, and secondary theories, is denied. 

3. Entitlement to an initial rating in excess of 30 percent for MS from March 2005 through April 9, 2020

In a November 2015 rating decision, the Veteran was granted service connection with a disability evaluation of 30 percent under DC 8018. The Veteran disagrees with the rating assessed.

Under DC 8018, a minimum 30 percent disability rating is assigned for MS. Disability ratings higher than 30 percent must be based on its residuals. With some exceptions, disability from neurological conditions and convulsive disorders and their residuals may be rated from 10 to 100 percent in proportion to the impairment of motor, sensory, or mental function. Manifestations include psychotic symptoms, complete partial loss of use of one or more extremities, speech disturbances, impairment of vision, disturbances of gait, tremors, visceral manifestations, etc., referring to the appropriate bodily system of the schedule. Partial loss of one or more extremities from neurological lesions, such as those caused by multiple sclerosis, is rated by comparison with mild, moderate, severe, or complete paralysis of peripheral nerves. 38 C.F.R. § 4.124a (2018).

A note following the DC further explains how the ratings are to be applied.

It is required for the minimum ratings for residuals under diagnostic codes 8000-8025, that there be ascertainable residuals. Determinations as to the presence of residuals not capable of objective verification, i.e., headaches, dizziness, fatigability, must be approached on the basis of the diagnosis rendered; subjective residuals will be accepted when consistent with the disease and not more likely attributable to other disease or no disease. It is of exceptional importance that when ratings in excess of the prescribed minimum ratings are assigned, the diagnostic codes utilized as bases of evaluation be cited, in addition to the codes identifying the diagnoses.

In other words, the ratings schedule evaluates multiple sclerosis based on its residuals. In accordance with the plain language of the Diagnostic Code 8018, in order to receive the 30 percent minimum rating there must be at least one residual of multiple sclerosis. If there is at least one residual, then the diagnostic code acts as a ratings floor-regardless of the severity of the residuals; the mere fact that they are present entitles a veteran to at least a 30 percent rating. If the residuals, as evaluated pursuant to their own respective diagnostic codes or as rated by analogy, warrant a rating in excess of 30 percent, then Diagnostic Code 8018 is read in conjunction with 38 C.F.R. §§ 4.14 and 4.25(b), and the veteran is assigned separate ratings that do not overlap in symptoms.

In May 2007, treatment notes recorded a neurological consultation which documented a history of ocular nerve palsy. The Veteran complained of symptoms of decreased eyesight, occasional vertigo and generalized weakness associated with a heavy chest. An assessment of probable MS was deemed adequate. No treatment was recommended due to stability of the diagnosis for 27 years. In February 2011, a neurology progress note recorded recent symptoms of periods of fatigability and spasticity which often improved after several days.

In February 2013, the Veteran was afforded a VA examination for MS. The examiner documented that he had no muscle weakness or mental health manifestation attributable to MS. 

In July 2019, the Veteran was afforded another VA examination for his MS. He complained of intermittent periods of fatigability without spasticity. No current symptoms of MS were documented on examination, except erectile dysfunction. The Veteran was also taking no medications for MS. His neurological examination and gait were both normal. There were no mental health manifestations from MS.

In April 2020, after a telephone interview and a review of the record, an examiner documented muscle weakness in the extremities due to MS. No other residual symptom was documented. His muscle strength was reduced in all testing. There was no atrophy. His upper extremity weakness was deemed mild in severity. His lower extremity weakness was assessed as having a moderate severity. Again, no mental health manifestations were documented. The examiner noted that the Veteran was able to independently perform his activity of daily living.

Based on the aforementioned, the Board finds that the criteria for more than the minimal 30 percent rating for multiple sclerosis are not met at any time during the pendency of the appeal. See 38 C.F.R. § 4.124a, DC 8018; Hart, supra. 

The Board notes that the Veteran has separate ratings for MS residuals of muscle weakness in his bilateral upper and lower extremities, each with a 20 percent disability rating. He is also service-connected for erectile dysfunction associated with MS. The Veteran’s other subjective symptoms of MS, such as periods of fatiguability, dizziness, and spasticity are contemplated in the 30 percent rating assigned under DC 8018. The record does not demonstrate that additional separate ratings for residuals of MS, nor a higher rating in excess of 30 percent is warranted. 

In reaching this conclusion, the Board has also not overlooked the various lay statements found in the record. However, while the Veteran is competent and credible to report on what he can see and feel, the Board finds more probative the opinions provided by the medical expert at the VA examinations as to the severity of MS than his lay claims. See Davidson, supra; Black v. Brown, 10 Vet. App. 297, 284 (1997) (in evaluating the probative value of medical statements, the Board looks at factors such as the individual knowledge and skill in analyzing the medical data).

In reaching all the above conclusions, the Board has also considered the doctrine of reasonable doubt. 38 U.S.C. § 5107 (b). However, as the preponderance of the evidence is against the claim, the doctrine is not for application. See also, e.g., Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert, supra.

4. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) from July 11, 2011 through April 9, 2020

The Veteran contends that his service-connected disabilities renders him unemployable.

Total disability rating may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16 (a). For the purposes of determining rating level, disabilities resulting from a common etiology or a single accident are considered a single disability. 38 C.F.R. § 4.16 (a).

During the period on appeal, the Veteran was service-connected for MS, rated as 30 percent disabling; MS residuals of muscle weakness, left upper extremity, rated as 20 percent disabling; MS residuals of muscle weakness, right upper extremity, rated as 20 percent disabling; MS residuals of muscle weakness, left lower extremity, rated as 20 percent disabling; MS residuals of muscle weakness, right lower extremity, rated as 20 percent disabling, and erectile dysfunction associated with MS, with a noncompensable rating. Thus, the Veteran meets the schedular criteria for one disability rated as 60 percent or more as his service-connected disabilities were due to a common etiology or a single accident.

In July 2011, the Veteran submitted a VA 21-8940 Veterans Application for Increased Compensation Based on Unemployability (TDIU application). He asserted that he could not secure or follow any substantial gainful occupation due to MS and a back disability. He reported he last worked full-time in 1980 and became too disabled to work in May 1992. His had a history of employment in administrative work, as an auditor, and as president/CEO of a company. He had not attempted to obtain employment since he had become too disabled to work. Regarding education, he had completed four years of college.

At the February 2013 VA examination for MS, the examiner opined that the Veteran’s MS would make it difficult for him to perform jobs requiring prolonged walking, climbing, and heavy lifting. 

During an April 2014 VA examination for his acquired psychiatric disability, the Veteran revealed that he had a bachelor’s degree in accounting and math. The last time he had worked was in 1992 in a family business. He had stopped working because he was unable to “go forward without funds for [his] business.” He explained that he was unable to pay employees or pay for the bid due to frozen accounts. In July 2019, a VA examination noted that he had no functional limitations from MS.

In July 2017, a vocational counselor determined that due to the severity of the Veteran’s mental health conditions and age, it was infeasible for him to return to work. It was also documented that he was able to drive and was independent in his activities of daily living.

In January 2020, the Veteran submitted another TDIU application. He indicated the last time he worked full-time was in 2005. Further, he became too disabled to work in January 2005. He had not attempted to work since he became too disabled to work.

During the April 2020 VA examination, the examiner opined that the Veteran’s MS caused difficulties walking and standing for long period of time. He would also have difficulties lifting. The examiner further opined that reasonable work considerations would include jobs that could be performed where the individual is primarily seated. The job would also allow for frequent position changes with no repetitive squatting, bending, twisting, or climbing, and no standing for extended periods of time.

Based on the aforementioned, the most probative evidence does not support that the Veteran cannot secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

The Veteran alleged that his service-connected disabilities have prevented securing or following a substantial gainful occupation; contrarily, medical evidence and his lay statements support that his non-service-connected disabilities primarily precluded his ability to maintain substantially gainful employment. Notably, the Veteran has alleged that his back disability prevents employment. However, his low back disability is not service-connected, and any limitation therefrom cannot be considered in a TDIU claim. Similarly, lay statements of record support that the Veteran’s age and non-service-connected acquired psychiatric disability prevent employment. However, such factors are not for consideration in his pending TDIU claim. 

While the Veteran service-connected disabilities have admittedly caused limitations in employment, as documented in his lay reports and VA examinations, the Board notes that the rating schedule compensates veterans for their impairment of earning capacity due to their service-connected disabilities.

The Veteran has obtained a bachelor’s degree in math and accounting. He has also worked in highly skilled occupations, such as working as an auditor and running a business as a CEO. While a heavy physical labor position would likely be precluded due to his MS, given the Veteran’s education and experience, he would be qualified for a position that is less physically demanding. His service-connected disabilities would not preclude this type of employment. In addition, such a position would provide income above the poverty level. For example, the Veteran would be qualified in an office setting, delivery services, or in sorting and assembling industries based on his education and experience. These jobs require less physically demanding tasks and the Veteran retains both the physical and mental capacity to perform such work when only his service-connected disabilities are considerations. The Board is not finding that these are the only positions which the Veteran would be able to obtain but lists them as some examples of the types of work which would not be precluded by the service-connected disabilities, given his high level of education and experience. 

The preponderance of the evidence is against finding his service-connected disabilities alone are of such severity so as to preclude his participation in any form of substantially gainful employment, as such, the Veteran’s claim for TDIU during the period on appeal is denied.

REASONS FOR REMAND

1. Entitlement to service connection for a cardiac disability, to include as secondary to service-connected MS. is remanded.

The Veteran contends that his cardiac disability is related to service, to include as secondary to his service-connected MS disability.

In September 2019, a VA examiner opined that it was less likely than not that the Veteran’s cardiac disability is related to service. It was also opined that the Veteran’s cardiac disability was less likely than not caused or aggravated by his service-connected MS. While the examiner offered rationale for the opinions for finding that his cardiac disability was not related to service or caused by MS, the examiner failed to offer any rationale to support the finding that his cardiac disability was not aggravated by his MS. Thus, the Board finds that the RO has failed to meet its pre-decisional duty to obtain an adequate VA medical opinion. As such, further development is necessary.

2. Entitlement to SMC based on requiring aid and attendance or by being housebound is remanded.

The existing record makes reference to a VA examination for SMC on November 22, 2010. See February 2011 rating decision and July 2016 SOC. After a thorough review of the record, the Board finds that it appears that the November 2010 VA examination is missing from the record. As such, the Board finds that the RO has failed to meet its pre-decisional duty to provide a complete record on which to decide the Veteran’s claim. As such, further development is recommended.

The matters are REMANDED for the following action:

1. Obtain an addendum opinion from an appropriate clinician regarding whether the Veteran’s cardiac disability is at least as likely as not aggravated beyond its natural progression by his service-connected MS. Note that aggravation means any incremental increase in disability in non-service-connected disabilities (i.e., any additional impairment of earning capacity) resulting from service-connected conditions.

The examiner is asked to provide the underlying reasons for all opinions expressed, and is reminded that the term “as likely as not” does not mean “within the realm of medical possibility,” but rather that the evidence of record is so evenly divided that, in the examiner’s expert opinion, it is as medically sound to find in favor of the proposition as against it.

2. Associate the November 2010 VA examination report pertaining to the Veteran’s claim for SMC based on a need for aid and attendance or by being housebound with the claims file. If the RO is unable to locate the examination all attempt to obtain this information should be documented in the claims file.

 

 

Bethany L. Buck

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N.B. Mmeje, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.